EMPIRE STATE BANK OF
COTTONWOOD, Appellant,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Respondent.

No. C0–88–2557.

Court of Appeals of Minnesota.

June 6, 1989.

Robert E. Boyle, Sharon L. Brenna, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellant.

David H. Gregerson, Mark J. Johnson, Lang, Pauly & Gregerson, Ltd., Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, C.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a summary judgment granted to respondent St. Paul Fire and Marine Insurance Company. The parties stipulated that there were no material issues of fact. The trial court concluded the cause of action involved neither a forgery nor a security and the definitions of the terms "forgery" and "security" contained in a bankers blanket bond were not ambiguous. Thus, the trial court concluded there

was no coverage under the bond for loss incurred as the result of criminal wrongdoing of a bank's executive vice-president who had misappropriated funds under certificates of participation. We affirm.

## FACTS

In 1983 and 1984, appellant Empire State Bank of Cottonwood participated in an alleged loan made by Citizens State Bank of Fulda to bank customer Duane Sather. Empire entered into two certificates of participation with Citizens wherein Empire invested $200,000 to participate in Citizens' loan to Sather. Both certificates were nontransferable and were signed by Citizens' executive vice-president, Robert E. Howe, as "an authorized official." Howe later admitted misappropriating the funds for his own use and has been convicted of criminal wrongdoing.

Ultimately, Citizens was declared insolvent on February 15, 1985, the FDIC was appointed its receiver, and Empire lost its entire investment of $200,000. At the time of the loss, Empire was insured by a bankers blanket bond issued by St. Paul Fire. In response to the loss, Empire filed a proof of claim on January 14, 1986 with St. Paul Fire. Coverage was denied. Empire then commenced this action.

On September 12, 1988, upon cross-motions for summary judgment, the trial court ruled in favor of St. Paul Fire. The trial court found that there were no material issues of fact and concluded that Empire's loss was excluded from coverage since the loss involved neither a "forgery" nor a "security" as defined by the bond. The trial court also found that the definitions of these terms in the bond were not ambiguous. Empire now appeals.

## ISSUES

1. Did the trial court err in interpreting the definition of "forgery" to exclude any loss which occurred as the result of misappropriation of funds by a bank officer who signed his own name as "an authorized official" of the bank?

2. Did the trial court err in ruling that the certificates of participation were not "securities" as defined by the terms of the bond?

3. Did the trial court err in failing to address the doctrine of reasonable expectations which was not raised at the trial court level?

## ANALYSIS

When reviewing an order granting summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987) (citing *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979)). Where questions of law are raised, this court is free to conduct an independent review of the law. *Service Oil, Inc. v. Triplett*, 419 N.W.2d 502, 503 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. April 20, 1988). Here, there are no issues of fact in dispute, and only the interpretation of law is involved.

### 1. Forgery

It is well established that unambiguous language must be given its plain and ordinary meaning. *Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645, 652 (Minn.1986). Further, the Minnesota Supreme Court has held that "where there is no ambiguity in the written terms of a contract, construction by a trial court or an appellate court is inappropriate." *North Star Center, Inc. v. Sibley Bowl, Inc.*, 295 Minn. 424, 426, 205 N.W.2d 331, 332 (1973) (citing *The Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 135 N.W.2d 681 (1965)).

Empire's reliance on *National City Bank of Minneapolis v. St. Paul Fire & Marine Insurance Co.*, 435 N.W.2d 57 (Minn.Ct.App.1989), *pet. for rev. granted* (Minn. March 17, 1989), is misplaced. In *National City*, we said:

As a general rule, *when the terms of an insurance policy are of doubtful meaning,* the construction most favor-

able to the insured will be adopted. Language in bankers blanket bonds shall be given a broad and liberal interpretation and construed most strongly against the insurance company.

*Id.* at 62 (citations omitted) (emphasis added). The two sentences must be read together. In *National City,* we found language in a bankers blanket bond of doubtful meaning and allowed recovery. Here, the terms of the bond are neither of doubtful meaning nor ambiguous.

■ In *National City,* the bank's claim arose under the ambiguous counterfeit provision of the bankers blanket bond as a result of a loss incurred from a loan default secured by counterfeit stock certificates. Here, however, Empire's claim arises under the forgery provision of the bankers blanket bond as a result of a loss incurred from misappropriation of funds secured by certificates of participation founded upon a fictitious loan. Empire's claim calls into question the definition of "forgery" contained in the bond:

> Forgery means the signing of the name of *another* with intent to deceive; *it does not include the signing of one's own name* with or without authority, in any capacity, for any purpose.

(Emphasis added.)

Empire argues that this definition is ambiguous because it does not define the term "another." The trial court found no ambiguity, nor do we. Empire contends that since the term "another" could include a corporation, and since Howe's signature effectuated the corporate signature of Citizens, he has forged the corporation's name. We disagree. A similar issue has been discussed in *Charter Bank Northwest v. Evanston Insurance Co.,* 791 F.2d 379 (5th Cir.1986). There, bank president Moon signed certificates of deposit in her true name with authority to sign the certificates on behalf of the bank. In construing Texas law, the court held:

> The deception inherent in the certificates of deposit signed by Moon *was not the identity of the signer, but the amount of the deposits.* That the certificates contained a fraudulent misrepre-

sentation of extrinsic facts did not make them forgeries * * *.

*Id.* at 382 (emphasis added).

Like Moon, Howe had the authority in his capacity as executive vice-president of Citizens to sign his name on behalf of the bank. Howe did not forge his own name or the corporate name of Citizens. Under the clear definition of forgery in the bond and under the holding in *Charter Bank Northwest,* Howe's conduct does not make this transaction a forgery.

Interpreting the unambiguous definition of forgery to include the signing of one's own name, with or without authority, in any capacity, for any purpose is not justified. Accordingly, Empire's claim here is unsuccessful.

### 2. *Security*

■ The trial court concluded that the certificates of participation were not securities. We agree. A "security" is defined in the bond as follows:

> Security means an instrument which
> (1) is issued in bearer or registered form; *and*
> (2) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; *and*
> (3) is either one of a class or series or by its terms is divisible into a class or series of instruments; *and*
> (4) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

(Emphasis added.) This language was adopted from the definition of a "security" found in the original Uniform Commercial Code enacted in 1965.

Minnesota courts have not yet considered whether certificates of participation qualify as securities. The federal court, however, in *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 452 F.Supp. 1108 (S.D.N.Y.1978) has held that certificates of participation were not investment securities

under Article 8 because none of the certificates under consideration were

> in "bearer or registered form," see U.C.C. § 8–102(1)(d), (c), or "one of a class or series or by its terms * * * divisible into a class or series of instruments."

*Id.* at 1118.

Here, the bond definition requires that all four criteria be met for an instrument to be considered a security. Here, as in *Corporacion Venezolana de Fomento*, the certificates under consideration are not issued in bearer or registered form and they are not transferable. *See* Minn.Stat. §§ 336.8–102(1)(d) and (e) (1986). Nor are they a part of a class or series, or capable of division into a class or series of instruments. Accordingly, since all four requirements are not satisfied, the certificates of participation do not qualify as securities.

### 3. *Reasonable Expectations*

Finally, Empire argues that the trial court erred in failing to apply the "reasonable expectations" doctrine here. The trial court did not address this issue because Empire did not raise it in its trial brief or cite the landmark Minnesota Supreme Court case, *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn.1985), which adopted that doctrine. Since the doctrine of reasonable expectations was not raised in the trial court, this court ordinarily, under well-established precedent, would not consider it. *See, e.g., Eakman v. Brutger,* 285 N.W.2d 95, 97 (Minn.1979); *Republic National Life Insurance Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349, 355 n. 2 (Minn.1979).

█ However, here we have determined to comment. The doctrine of reasonable expectations is not appropriate under these facts and is used only in limited circumstances:

> The doctrine of protecting the reasonable expectations of the insured is closely related to the doctrine of contracts of adhesion.

*Atwater,* 366 N.W.2d at 277. In *Atwater,* the supreme court applied the doctrine of reasonable expectations to interpret insurance contract language applicable under a burglary loss claim to find coverage consistent with the reasonable expectations of the insured, even though the policy provisions did not cover those expectations. In so doing, the supreme court found no ambiguity in the policy, but found hidden major exclusions and unconscionability of the clause due to unequal bargaining power and the insured's lack of insurance expertise.

Here, there is no disparity between the bank and the insurance company that would lead us to apply the reasonable expectations doctrine. The fact that Empire is a small country bank does not relieve it of the responsibility of reading and understanding the terms of the bond, which are plain and unambiguous.

Accordingly, the application of the doctrine of reasonable expectations is not appropriate under these facts even if it had been properly raised in the trial court.

### DECISION

Affirmed.