**Dwight Leslie SALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 66074.**

Court of Criminal Appeals of Texas, Panel No. 3.

March 10, 1982.

E. Stanley Topek, Houston, court appointed on appeal only, for appellant.

John B. Holmes, Jr., Dist. Atty. and James C. Brough & Mike Aduddell, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, W. C. DAVIS and McCORMICK, JJ.

## OPINION

McCORMICK, Judge.

Appellant was convicted of possessing a forged check with intent to utter. A Harris County jury assessed punishment at eight years in the Texas Department of Corrections.

Appellant contends that the evidence is insufficient to support the conviction because "there is no evidence that the act was the act of another who did not authorize the act."

A teller at the North Freeway Bank positively identified appellant as the man who passed her a certain check to cash. The check was on the account of Unlimited Art and appeared to have been made by Richard DeNeve, though the signature was not plainly legible. A Richard DeNeve testified at trial that he did not sign the check. It was made out to Dwight Sales and was for $1,100. The back of the check revealed that it had been endorsed by a Phyllis Dunn. It had then been endorsed by Dwight Sales. A Phyllis Dunn had an account at that bank and apparently that was the reason the check was cashed by the bank. Appellant gave the teller identification showing that he was Dwight Sales and the teller cashed the check. Nancy Rowland testified that she was the owner of Unlimited Art and

that no one else had permission to sign or make any checks on the account of Unlimited Art. She did not sign or authorize the check in question and did not know and had not heard of a Richard DeNeve.

The State, apparently in order to prove intent, showed appellant had passed another forged check, *Gordon v. State*, 138 Tex. Cr.R. 637, 137 S.W.2d 1023 (1940).

Before the offense of forgery can be committed under the theory alleged, the forged instrument must purport to be the act of another who did not authorize the act. If the check in question purported to be the act of another (other than the person signing it) who had not authorized it, the evidence is sufficient. Because the signature was illegible, it cannot be said that the State proved that the signer did not sign his own name.

Only one person, Nancy Rowland, was authorized to sign the check that was the subject of this prosecution. Rowland testified that she did not sign the check and gave no one else authority to sign the check. Therefore, it can be argued that whoever signed the illegible signature as maker purported to be the person authorized to sign on the account of Unlimited Art. Under such a conception, the evidence showed that the check purported to be the act of another who did not authorize the act even if the signer signed his own name.

This view is bolstered by cases such as *Gonzalez v. People*, 149 Colo. 548, 369 P.2d 786 (1962). In that case, the defendant's friend obtained a check of a company with which he had no relationship and signed his own name as maker. The defendant then cashed the check. Interpreting a statute similar to that of the Texas forgery statute, the Colorado court held that a forgery had been shown.

Several Texas cases also tend to support this viewpoint. In *Cobb v. State*, 105 Tex. Cr.R. 81, 286 S.W. 1086 (1926), the check was signed "Liberty Cafe by Geo. Angelo." The proof showed that no George Angelo was authorized to sign the check. The defendant therefore claimed that the check

was a nullity and could not be the subject of a forgery and that the State should have alleged that Geo. Angelo was a fictitious person. This Court upheld the conviction saying: "The manifest purpose of the check * * * was to create the impression that George Angelo had the right to bind the Liberty Cafe in the execution of the check." But that case did not deal with the contention that there had been no evidence that the signature by George Angelo purported to be no one else's signature than a George Angelo. See also, *Chowning v. State*, 137 Tex.Cr.R. 4, 127 S.W.2d 461 (1939).

The problem with the above analysis appears to be prior Texas caselaw that holds that a false claim of agency will not constitute forgery. In *Simms v. State*, 116 Tex. Cr.R. 97, 32 S.W.2d 852 (1930), George Simms signed a check as maker "R. C. Simms by George Simms." The Court said:

"... [W]hen one signs the name of another to a document expressly stating in the writing that same is so signed by himself as agent, this purports to be the act of the agent and in no wise the act of his principal. We are at a loss to see how the question of determining the validity of the document by proof aliunde that the agent was authorized to sign the name of his principal, in any wise prevents or hinders the act done, viz. the signing of the name of the principal by his agent from appearing to be the physical act alone of the agent. A document so signed in no sense purports to have been signed by the principal but is in fact signed only by the agent and necessarily purports to have been signed by him."

The case goes on to say that the defendant was possibly guilty of swindling but could not be guilty of forgery. See also, *Nobles v. Marcus*, 533 S.W.2d 923 (Tex. 1976); *Gilbert v. United States*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962); and *People v. Levitan*, 49 N.Y.2d 87, 424 N.Y. S.2d 179, 399 N.E.2d 1199 (1980). The civil case of *Gulf v. Cantrell*, 387 S.W.2d 416 (Tex.Civ.App., Beaumont, 1965, dismissed), is also of interest. There, interpreting the definition of forgery, the court held that

signing ones own name to a credit card receipt when using another person's credit card could not be forgery.

Therefore, it may be argued that the proof in this case showed simply a check, signed by an unknown person, who claimed to have authority to sign the check for Unlimited Art when he in fact had no such authority. For all that is known, the person signing the check may have signed his real name.

A rationale behind the rule that a false statement of agency is not a forgery can be found in Perkins on Criminal Law, Chapter 4, Section 8, page 346:

"... An additional point is to be noted in cases in which one fraudulently purports to act as agent for another. If he has no power or authority to act in this capacity, the other will not be bound; but if the signature contains both names and shows that the signer was purporting to act as agent for the other, the writing is not a forgery. Strictly speaking there is a false writing in such a case because it purports to be the instrument of the principal whereas it is not so in fact; but since any reliance will be upon the implied warrant of authority clearly manifested by the writing itself, it is felt not to come within the type of wrong which forgery is designed to punish. This is the theory back of the holding that signing a note in the name of a fictitious firm, purportedly made up of the writer and another person, is not forgery though done with intent to defraud. The writing binds the man who wrote it and is false merely in the implied warrant of authority to bind the other."

In discussing forgery, the Ninth Circuit Court of Appeals recently made the following observations:

"The distinction is as between a document signed by a 3rd person using the signature of another (a forgery) and a document signed by an authorized person but containing a promise known to be false that does not bear on the authenticity of the instrument (not a forgery). We acknowledge that the controlling catego-

ries between acts that are forgeries and acts that are not are neither as simple or as neat, even in a methaphysical sense, as the summary statement given here. As is true with most interesting legal points, the close cases present questions of degree rather than kind." *United States v. Price*, 655 F.2d 958 (9th Cir. 1981), at 960. Here, however, as will be seen, any reliance is on the deceptive appearance of the instrument itself rather than a separate claim of agency included in the check.

■ This Court has long held that if a person uses his own name in signing a check it cannot be a forgery unless it was done to create confusion with a person of a similar name. In the past, if a person took a counter check at a bank in which he had no account and signed his own name, no forgery had occurred because he had not purported to be anyone other than who he was. *Young v. State*, 529 S.W.2d 542 (Tex.Cr. App.1975).

However, if a person signs a counter check with his true name, intending to defraud by having that name confused with another person who has an account at that bank, a forgery is committed, *Edwards v. State*, 53 Tex.Cr.R. 50, 108 S.W. 673 (1908). The distinction between the two being that in the latter case the check purports to be the act of another person and attempts to have that other person's account debited.

But this instance differs from cases in which a counter check is signed by the defendant in his own name. Here, the check was on the particular account of Unlimited Art. There was a computer coded account number on the check possessed by appellant. When a person signs a personalized check which has such a coded number (which represents an individual's computer "name"), he is in fact purporting to be that other person or business regardless of the name signed just as surely as if he had signed a counter check with the name of a person having an account at that bank.

Since the falsity here was in the check itself and not a separate statement in the check, the check was a forgery. Appellant's ground is overruled.

■ Appellant urges that a comment by the bank teller during redirect by the State constituted reversible error. The record shows the following:

"Q. Ms. Baker, you stated on Cross Examination that Dwight Leslie Sales and the transaction he made with you in that check was the last transaction you made before you left that day; is that correct?

"A. Yes, sir.

"Q. You had how many opportunities to look at the driver's license?

"A. That day?

"Q. That day. Okay.

"A. Well, I had it right in front of me the whole time.

"Q. Okay. And then the prior day did you have occasion to see the driver's license?

"A. Yes, sir.

"Q. And what was the occasion that you had to see the driver's license?

"A. He presented a check to another teller, and he panicked and drove off and left everything there."

Appellant, on cross-examination, had extensively questioned the witness about her identification by inquiring as to how many times and when she had seen the driver's license with appellant's picture before identifying appellant as the man who had possessed the check. The State, therefore, was entitled to inquire about the circumstances of her viewing the license.

We note that testimony outside the jury's presence showed that the incident to which the teller referred occurred the day *after* the appellant gave the teller the check that was the basis of this offense. The anticipated answer to the question concerning whether she had seen the license *prior* to the time appellant had the Unlimited Art check would be "no." It was clarified for the jury by appellant's objection and the witness' response that the witness referred to an incident occurring the day after the passing of the Unlimited Art check.

The testimony did not show an extraneous offense. The jury could reasonably have concluded that appellant drove away in a panic because he had passed a forged check the previous day (the offense for which he was being tried). Any implication of an extraneous offense is tenuous at best. Even if the testimony implied the existence of an extraneous offense, any error was harmless in view of the fact that to prove intent the State properly introduced evidence of appellant possessing another forged instrument at a different bank, *Thrush v. State*, 515 S.W.2d 122 (Tex.Cr. App.1974).

Finally, appellant complains about the argument of the prosecutor during the punishment phase in which the prosecutor argued:

> "The bottom line right now. You are there. You can be a weak link or strong link in that chain. That's going to be your decision and I would ask you, it's got to be unanimous. Get back there and decide on something. Don't get hung up because we have to go back and try the case again. Don't get hung up on punishment. Decide on something."

Appellant, after the jury retired, moved for a mistrial but failed to object at the time of the remark. If, though it need not be determined here, the remark was error because it was outside the record and/or implied that the same jury would have to rehear the case, it was not so damaging that it could not have been cured by an instruction. See, *Cooper v. State*, 578 S.W.2d 401 (Tex.Cr.App.1979). Therefore, since no timely objection was lodged and there was no request for an instruction to disregard, nothing is presented for review. In *Braxton v. State*, 528 S.W.2d 844 (Tex. Cr.App.1975), the prosecutor told the jury, "We don't need one man hanging in there so we will have to try this case again." Since there was no timely objection, this Court held that nothing was presented for review.

Finding no reversible error, the judgment is affirmed.