**CHARTER BANK NORTHWEST,**
Plaintiff-Appellee,

v.

**EVANSTON INSURANCE COMPANY,**
Defendant-Appellant.

No. 85–2628.

United States Court of Appeals,
Fifth Circuit.

June 11, 1986.

Robert L. Suomala, Keith A. Hanson, Chicago, Ill., for defendant-appellant.

Stephen L. Baskind, James A. Knox, Dallas, Tex., for plaintiff-appellee.

Before WISDOM, RUBIN, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Evanston Insurance Company appeals from a summary judgment holding that certificates of deposit for $200,000, issued upon actual deposits of $2,000, were "forged" and "altered" within the meaning of Evanston's bond with Charter Bank Northwest. Finding that the certificates were signed in the true name of the bank president who issued them, and that they were not altered, we reverse.

## I

Charter Bank Northwest, formerly "Stonewall Bank," was one of several Texas banks victimized by a fraudulent loan-pyramiding scheme perpetrated by Orrin Shaid, "owner" of the "Ranchlander Bank," and the woman he installed as bank president, M. Jean Moon. Shaid originally purchased the bank in the name of the woman he lived with by obtaining $1,000 certificates of deposit from Ranchlander, changing their amounts to $100,000, and then pledging them for loans at other lending institutions. After taking control of the bank, Shaid and Moon prepared additional fraudulent certificates to pay off the older loans as they came due, typing in $100,000 on the original certificates, but making out the bank receipts for $1,000. Following several months of instant affluence, Shaid's house of cards came tumbling down when Moon, learning of his imminent departure to Acapulco—without her, we infer—went to the FBI. *See United States v. Shaid,* 730 F.2d 225 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984).

Before the scheme was uncovered, however, Shaid borrowed $200,000 from Charter Bank, pledging two certificates of deposit payable to Shaid for $100,000 each, and signed by M. Jean Moon. When the certificates matured, Charter Bank requested that Ranchlander Bank renew them. Moon responded by issuing two new certificates, each in the amount of $100,000.

Unfortunately for Charter Bank, Shaid made actual deposits of only $2,000 in connection with the certificates. When Shaid defaulted on the Charter Bank loans, Charter attempted to redeem the Ranchlander certificates. Predictably, Ranchlander failed, and the FDIC, which stepped in as receiver, refused to pay Charter more than the $2,000 actually deposited to Ranchlander for the certificates.

During these events, Charter Bank was an insured in a bond, issued by Evanston Insurance Co., insuring losses for certain transactions involving securities, documents, or other written instruments that later proved to have been either (a) counterfeited or forged, or (b) raised or otherwise altered.[1] However, losses resulting

---

1. This was not a "Standard Form 24" bankers blanket bond, but was styled by Evanston as a "Professional and Directors and Officers Liability and Comprehensive Blanket Bond." Insuring Agreement 5(A) of the bond provides coverage for:

(A) Loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or

from the non-payment of loans secured by instruments procured by the borrower through "trick, artifice, fraud or false pretenses," but not forgery or alteration, were excluded from coverage.[2]

When Charter Bank was unable to redeem the Ranchlander certificates of deposit with the FDIC, Charter sued Evanston Insurance, contending that the certificates were forged or altered within the meaning of the bond, and that its loss on the loans to Shaid resulted through such forgery or alteration. The facts were stipulated, and both parties moved for summary judgment. It was agreed that the certificates were signed and executed by Ms. Moon in her true name; that they were issued on printed forms regularly used by Ranchlander Bank and that they appear on their face to be issued by Ranchlander; and that Moon had express and actual authority to issue and sign, on behalf of the bank, certificates in connection with valid and legitimate transactions, but that she had no express authority to issue any certificate of deposit for an amount in excess of the amount of the deposits actually received by the bank.

The district court, ruling on the motions for summary judgment, held that the certificates were forged, and that the procedure used by Moon to separate the carbon receipts from the certificates issued to the debtor constituted an alteration of the certificates within the meaning and scope of the bond. Finally, the court found that the loss, having occurred "through" the forgery and alteration of the certificates, was within the scope of Insuring Agreement 5 of the bond, and that Charter Bank was entitled to recover $125,000, the limit of the bond, from Evanston Insurance.

Evanston Insurance appeals, arguing that the certificates were neither forged nor altered, and that the district court erroneously found coverage under the bond.

II

■ On the forgery issue, Evanston cites a line of cases from various jurisdictions that involve questions of bond coverage; these cases distinguish between documents that lack genuineness or authenticity and documents containing mere misrepresentations. The majority of these cases, however, deal with "Standard Form 24" bankers blanket bonds, in which coverage is limited to documents that are forged *as to signature*. *See, e.g., State Bank of Poplar Bluff v. Maryland Casualty Co.*, 289 F.2d 544 (8th Cir.1961). The bond issued by Evanston, by contrast, does not contain the limiting "as to signature" language, and we find the cited cases inapposite.

The term "forged" in Evanston's bond is not defined, and the parties agree that its meaning must be found in the definition of forgery under Texas law. Under Texas law, one who signs his own true name does not commit forgery, even where acting as an agent without actual authority: "[w]hile the alleged agent may be culpable for his fraud he has not commited a forgery." *Nobels v. Marcus*, 533 S.W.2d 923, 926 (Tex.1976). A narrow exception to this general rule has been created to cover situations in which one signs his own name with the fraudulent intent of having his signature taken as that of another with the same name. *See Moore v. State*, 666 S.W.2d 632, 634 (Tex.App.—Houston [1st Dist.] 1984, no writ). Although Moon's

---

delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon, any securities, documents or other written instruments which prove to have been
(i) counterfeited or forged, or
(ii) raised or otherwise altered or lost or stolen....

**2.** Exclusion 2(E) of the bond excludes:
(E) Loss resulting from the complete or partial non-payment of, or default upon,

(1) any loan or transaction in the nature of, or amounting to, a loan made by or obtained from the Insured, or
(2) any note, account, agreement or other evidence of debt assigned or sold to, or discounted or otherwise acquired by, the Insured whether procured in good faith or through trick, artifice, fraud or false pretenses, unless such loss is covered under Insuring Agreement 1, 4 or 5....

agency did not include authority to issue certificates of deposit in amounts exceeding deposits actually received by the bank, Evanston argues that the certificates were not "forged" because Moon signed her own name.

Charter Bank points in response to the definition of "forgery" in Texas Penal Code Ann. § 32.21 (Vernon 1974), which provides:

(a) For purposes of this section:

(1) "Forge" means:

(A)   to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) *to be the act of another who did not authorize that act....*

(emphasis added).   Charter Bank argues that the certificates represented an act by Ranchlander—the receipt of a deposit and a promise to pay by the bank—and that when Moon issued $100,000 certificates on deposits of $1,000, she made a writing that purported "to be the act of another who did not authorize that act."   This argument, perhaps plausible with a counterfeit certificate, must be rejected here because it would extend the definition of a forgery to the unauthorized writing of an agent who signs his own name, in direct conflict with the Texas Supreme Court's decision in *Nobles.*

Charter Bank argues that a more recent case, *Sales v. State*, 628 S.W.2d 796 (Tex. Crim.App.1982), supports its position. *Sales* involved a check drafted on the account of a company whose owner was the only person authorized to sign checks on the account.   Because the check was signed illegibly, the argument was made that there was no forgery since the defendant may have signed his own name.   The court rejected this argument, drawing an analogy to the situation in which a person signs his true name to a check while fraudulently intending to have his signature confused with another person of the same name:

There was a computer coded account number on the check possessed by appellant.   When a person signs a personalized check which has such a coded number (which represents an individual's computer "name"), he is in fact purporting to be that other person or business regardless of the name signed just as surely as if he had signed a counter check with the name of a person having an account at that bank.

*Id.* at 799.   Thus, even if Sales's illegible signature on the check in question was his own name, the fact that the check had someone else's computer coded account number on it implicitly represented that he was that other person.   *Sales* therefore creates no exception to the central requirement of forgery under Texas law: that there be deception as to the identity of the signer.

The deception inherent in the certificates of deposit signed by Moon was not the identity of the signer, but the amount of the deposits.   That the certificates contained a fraudulent misrepresentation of extrinsic facts did not make them forgeries, since Moon, in signing her true name as president of Ranchlander Bank, did not intend to confuse her identity with any other person.   The district court thus erroneously concluded that the Ranchlander certificates of deposit were forged within the meaning of the bond issued by Evanston Insurance.

### III

■   As to whether the certificates of deposit were "altered" within the meaning of the bond, the parties stipulated that the process Moon used to complete them was as follows:

(1) Ms. Moon typed in all the necessary information except the amount on the Certificates of Deposit with a carbon copy attached; (2) she then detached the carbon copy from each original Certificate of Deposit; (3) she then typed onto a blank piece of paper held over the appropriate space on each carbon copy the amount of "$1,000", so that a carbon impression indicating that amount appeared in the appropriate space on each carbon copy; and (4) she then typed in

the amount of "$100,000" in the appropriate space on each original Certificate of Deposit.

Charter Bank suggests that Tex.Bus. & Comm.Code Ann. § 3.407(a)(2) (Vernon 1968) is relevant to the issue of alteration. That section provides that the filling in of an incomplete instrument otherwise than as authorized constitutes a material alteration of the instrument. However, this provision refers to unauthorized completion by someone other than the original signer of an instrument. *Cf.* Tex.Bus. & Comm.Code Ann. § 3.407, comment 2 (Vernon 1968) ("If the completion is unauthorized and has the effect of changing the contract *of any previous signer,* this provision follows the generally accepted rule in treating it as a material alteration which may operate as a discharge." (emphasis added)). Moon could not alter, within the meaning of § 3.407(a)(2), an instrument of which she was the maker and only signer. Otherwise, the issue of alteration in this case would turn on whether Moon filled in the unauthorized amounts just before or just after signing her name to the certificates, *see* Tex.Bus. & Comm.Code Ann. § 3.115(a) (Vernon 1968), a distinction reminiscent of the era of the old law merchant and the NIL, and one that we see no good reason for making.

Although other creative arguments might be advanced as to why the term "altered" should be read in this situation other than according to its commonly understood meaning, we decline to pursue them. Alteration presupposes a genuine instrument that has been fraudulently changed. *See Richardson National Bank v. Reliance Ins. Co.,* 491 F.Supp. 121 (N.D. Tex.1977), *aff'd,* 619 F.2d 557 (5th Cir. 1980). In contrast to genuine certificates issued in the amount of deposit, and then altered by the purchaser, the certificates in this case were fraudulent from their inception, no genuine certificates ever having existed. The district court incorrectly held that they were "altered" within the meaning of the bond.

## IV

Charter Bank's loss in this case occurred not because Shaid's certificates of deposit were forged or altered, but because they contained fraudulent misrepresentations of fact. The risk of such a loss was allocated to Charter Bank under Exclusion 2(E) of the bond, *see* n.2, *supra,* and was outside the bond's coverage.

REVERSED and REMANDED for entry of judgment for defendant.