# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 22, 2010

No. 09-10262

Lyle W. Cayce
Clerk

GREAT AMERICAN INSURANCE COMPANY,

> Plaintiff - Appellant Cross-Appellee

v.

AFS/IBEX FINANCIAL SERVICES INC,

> Defendant - Appellee Cross-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Great American Insurance Company ("GAIC") issued crime protection policies to AFS/IBEX Financial Services, Inc. ("AFS"). After suffering a loss caused by the forgery of certain checks, AFS submitted a claim to GAIC. GAIC denied coverage and filed for declaratory judgment. AFS counterclaimed seeking coverage and damages. After a jury trial, the district court entered judgment for AFS. The appeals of both parties are now before the court. We affirm in part, vacate in part, and remand.

09-10262

## I.

AFS provides premium financing in the insurance industry. This service is useful because many insurance carriers require the entire policy premium to be paid up front and do not offer payment plans. In connection with this business, AFS entered into an agreement with Charles McMahon, Sr. ("McMahon Sr."), who owns the Charles McMahon Insurance Agency. This agreement contemplated that McMahon Sr. would create and sign premium finance applications on behalf of insureds. AFS would then send a check to the insurance company for the purchase price of the insurance, and the insureds would send regular payments to AFS.

McMahon Sr.'s son, Charles McMahon, Jr. ("McMahon Jr."), was the office manager at McMahon Sr.'s agency and was responsible for submitting applications for premium financing to AFS. McMahon Jr. exploited this business relationship by submitting approximately 122 false applications for premium financing to AFS. These fraudulent applications induced AFS to issue 127 checks made payable to "Charles McMahon Insurance Agency." McMahon Jr. endorsed these checks "Charles McMahon Insurance Agency" and deposited the funds into his own personal bank account. McMahon Jr. never endorsed the checks with his own name or signature. McMahon Sr. was aware that his son had responsibility for submitting financing applications to AFS, but was not aware of his son's fraud. McMahon Sr. allowed McMahon Jr. to endorse checks payable to the agency and to write checks out of the agency's account for legitimate business purposes.

After McMahon Jr.'s scheme was uncovered, AFS submitted a claim to GAIC for $519,110.58 under the forgery coverage provision of its Crime Protection Policy No. SAA 268-75-98-03 (the "SAA policy") for losses beginning

2

in July 2005 and discovered by AFS in June 2006. Asserting that no forgery occurred under the terms of the SAA policy, GAIC denied coverage and filed for a declaratory judgment from the district court, asking that it find that GAIC had no duty to indemnify AFS for its loss. AFS counterclaimed for breach of contract and alleged that coverage existed for its loss under the SAA policy which was in effect from March 15, 2006 to March 15, 2007, as well as under the policy in effect prior to the SAA policy, Crime Protection Policy No. CRP 268-75-98-02 (the "CRP policy"), which was effective from March 16, 2005 to March 16, 2006. AFS also counterclaimed for extra-contractual damages against GAIC, alleging bad faith and violations of the Texas Insurance Code. Additionally, AFS counterclaimed for consequential breach of contract damages to recover the litigation expenses it incurred in its suit against McMahon Jr. and Chase Bank (the "McMahon Jr. Lawsuit") for the recovery of the alleged losses.

GAIC filed a motion for summary judgment, arguing that dismissal was appropriate because neither insurance policy provides coverage for AFS's claims. AFS filed a cross motion for summary judgment, alleging that coverage existed under the SAA policy's plain meaning; alternatively, it argued that its loss was covered under the CRP policy because it was ambiguous and thus should be strictly construed in its favor. AFS also moved for summary judgment on its damage claims. The district court concluded that coverage for AFS's loss existed under the plain meaning of the SAA policy. Finding the relevant contract language of the CRP policy ambiguous, it concluded that coverage for AFS's loss was available under that policy as well. However, the district court found that issues of fact remained regarding AFS's damage claims.

The remaining issues went to trial by jury. At the close of evidence, the district court dismissed AFS's extra-contractual damage claims, stating that

since AFS's damages all potentially flowed from GAIC's breach of its insurance contract, the same damages could not, as a matter of law, satisfy the damage element for AFS's extra-contractual claims. The jury found that litigation expenses incurred by AFS in the McMahon Jr. Lawsuit were a natural, probable, and foreseeable consequence of GAIC's failure to comply with its duty to pay under the insurance policy, entitling AFS to recover consequential breach of contract damages.  The district court entered final judgment against GAIC awarding AFS $469,110.58 for GAIC's breach of contract, 18% statutory interest of $204,506.50 under the Texas Insurance Code, $102,607.83 for consequential breach of contract damages, attorney's fees of $146,440.00, and $60,852.88 for prejudgment interest.

On appeal, GAIC challenges (1) the district court's finding of coverage for AFS's loss under the SAA and CRP policies; (2) the district court's award of statutory interest and attorney's fees to AFS for its breach of contract; and (3) the jury's award of consequential damages to AFS. AFS challenges (1) the district court's dismissal, at the close of evidence, of its extra-contractual claims and (2) the district court's award of statutory interest only until the date of judgment.  We address each issue in turn.

## II.

We review summary judgment rulings de novo, *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 550 (5th Cir. 2000), and apply the same standard as the district court. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We view all evidence and factual inferences in the light most favorable to the party opposing the motion. *Price v.*

*Fed. Exp. Corp.*, 283 F.3d 715, 719 (5th Cir. 2002). We review de novo the district court's determination of state law, *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991), as well as its interpretation of the insurance contract. *Potomac Ins. Co.*, 198 F.3d at 550.

## III.

The threshold question is whether AFS's loss was caused by a forgery such that the forgery provision of the SAA policy was implicated. We focus our initial inquiry only upon the SAA policy because if coverage existed under it, AFS's entire loss is covered and we need not decide whether the CRP policy also covers the loss. The relevant portion of the SAA policy states:

**2. Forgery or Alteration**

a.   We will pay for loss resulting directly from **forgery** or alteration of checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in money that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

that are purported to have been so made or drawn . . . .

GAIC admits that the SAA policy insured AFS against losses for the forgery or alteration of checks, and that the numerous checks issued by AFS were covered under the SAA policy. It disputes, however, that a forgery occurred such that the coverage contemplated by the SAA policy was triggered. According to the SAA policy,

**Forgery** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority in any capacity, for any purpose.

09-10262

Despite the definition of forgery found within the SAA policy, GAIC argues that the district court erred by failing to interpret the term "forgery" in the commercial paper context. Commercial paper in Texas is governed by the Uniform Commercial Code ("UCC") which Texas has adopted. Under Section 3-405 of the UCC (Section 3.405 of the Texas Business and Commerce Code), if one is authorized to sign another's name, and does so, but deposits the checks into his own account or for his personal gain, that signature is not a forgery. GAIC reasons that since McMahon Jr. was authorized to sign the name "Charles McMahon Insurance Agency" his signature is not a forgery and AFS is not entitled to any recovery under the SAA policy.

GAIC's argument conflicts with the basic principles of Texas insurance law, and we decline its invitation to interpret the term "forgery" under the UCC. Under Texas law, an insurance policy, like other contracts, is the law between the parties. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). In interpreting an insurance contract, terms are given their plain, ordinary meaning unless the parties intended the term to have a different, technical meaning. *DeWitt County Elec. Coop. Inc., v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). When terms are defined in an insurance policy, those definitions control. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). The SAA policy specifically defines the term "forgery." Consequently, its definition controls and there is no merit to GAIC's argument that the court should look outside the four corners of the insurance agreement and define it according to the UCC definition. *See Trinity Universal Ins. Co.*, 945 S.W.2d at 823.

Having failed to persuade the court that the UCC's definition of "forgery" should prevail, GAIC has further argument. According to it, even if the court

6

looks solely to the definition of "forgery" found within the SAA policy, no forgery occurred because the signature found on the checks at issue contains in part the name "Charles McMahon." As noted above, the SAA policy defines forgery as "the signing of the name of another person or organization with intent to deceive; *it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose*." (emphasis added).

GAIC reasons that because the words "Charles McMahon" are part of the endorsement (here "Charles McMahon Insurance Agency") and also part of the endorser's name (here "Charles McMahon Jr."), the endorsements at issue are not forgeries under the SAA policy. This reading distorts the phrase "a signature which consists in whole or in part of one's own name" to mean that there would be no forgery and therefore no coverage when an endorser shares any part of the name he or she is signing even though the endorser purports to be signing the name of another for a deceitful purpose. For example, if a person named Bob Smith stole Bob Jones's checkbook and endorsed a check "Bob Jones," there would be no coverage because "Bob" was part of the endorsement and also part of the endorser's name. As the district court noted, GAIC's interpretation of the SAA policy's exclusionary clause is unreasonable and leads to absurd results. A better reasoned reading of the exclusionary clause leads to the conclusion that the phrase "a signature which consists in whole or in part of one's own name" encompasses two types of signatures: (1) a signature which consists of only the signer's own name or (2) a signature which consists of the signer's own name and the name of another. Under this reading, the exclusionary clause does not bar coverage because it is undisputed that McMahon Jr. did not sign his own name

09-10262

to endorse the checks; he used only the name of "Charles McMahon Insurance Agency."

Finally, GAIC argues that no forgery occurred under the SAA policy because McMahon Jr. was an agent for his father's insurance company with general authority to endorse checks payable to his father's company. Initially we note that the central requirement of forgery under Texas law is that there be deception as to the identity of the signer. *See Charter Bank Northwest v. Evanston Ins. Co.*, 791 F.2d 379, 382 (5th Cir. 1986). While it is true that an agent who signs his own true name does not commit forgery, even where acting as an agent without actual authority, this is not what happened here. *See Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976) (noting that "while the alleged agent may be culpable for his fraud he has not committed a forgery"). It is undisputed that McMahon Jr. did not sign his own name. Rather, by the signature "Charles McMahon Insurance Agency," he represented himself to be someone else, and therefore signed "the name of another person or organization with intent to deceive," the SAA policy definition of forgery.

Furthermore, GAIC's reliance upon *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 460 (Tex. App.— Dallas 1981, no writ) (rev'd on other grounds) for the proposition that "if a person signs the name of another with authority to do so, the signature is not a forgery" is misplaced. *1st Coppell Bank* and the other Texas civil cases that stand for this proposition all reference the Texas Penal Code section that encompasses forgery, 32.21. In relevant part, section 32.21(a)(1) defines "forge" to mean "to alter, make, complete, execute, or authenticate any writing so that it purports: (I) to be the act of another who did not authorize that act . . . ." TEX. PENAL CODE ANN. § 32.21(a)(1)(I). But these cases all refer to, as the Penal Code section also contemplates, specific

8

"writings"—in *1st Coppell Bank,* for example, a specific deed of trust. They do not stand for the proposition, advanced by GAIC, that no forgery occurred because McMahon Jr. had general authority to sign checks on behalf of his father's agency. Indeed, in *1st Coppell Bank,* the court concluded that sufficient evidence existed to support the trial court's finding of fact that the deed of trust in question was a forgery where the forger's mother testified that "she let her son sign their names to some documents" and agreed that "her son had 'loose permission' to sign [her and her husband's] names to a lot of papers." 742 S.W.2d at 460. Critical was her unequivocal testimony that she did not authorize anyone to sign her name to the specific deed of trust in question. *Id.* Here, it is undisputed that as to the 127 checks at issue, the Charles McMahon Insurance Agency (or its principal, McMahon Sr.) did not authorize McMahon Jr. to sign its name and deposit the checks into his account. It is of no consequence that McMahon Jr. was authorized to endorse *other* checks or sign *other* documents, so long as he knew he had no authority to endorse *these* checks.

For the reasons discussed above, we affirm the district court's finding of coverage under the SAA policy.

## IV.

GAIC next argues that the district court erred by awarding statutory interest and attorney's fees to AFS. Under the Texas Insurance Code, an insured is entitled to recover 18% statutory interest and attorney's fees if a covered claim is not paid within 60 days of the insurer receiving a proof of loss. TEX. INS. CODE ANN. §§ 542.058, 542.060. GAIC concedes that it did not pay AFS's claim within the 60-day time frame mandated by the Texas Insurance Code. It argues, however, that because AFS's claim was not covered that the district court erred by awarding AFS statutory interest and attorney's fees. Our

conclusion that AFS's loss was covered eviscerates GAIC's argument, and we find no error in the district court's award of statutory interest and attorney's fees to AFS.

## V.

Lastly, GAIC argues that even assuming that it breached its insurance contract with AFS, under Texas law, the attorney's fees and expenses that AFS incurred in prosecuting the McMahon Jr. Lawsuit are not recoverable as consequential breach of contract damages. This question presents a legal determination subject to de novo review. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).

Generally under Texas law, attorney's fees and litigation expenses may not be recovered unless provided for by statute or by contract between the parties. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). But a plaintiff may recover attorney's fees and other reasonable expenses which were incurred in litigation with a third party as damages when such damages are the natural and proximate consequence of the defendant's wrongful conduct, i.e., when those expenses represent consequential damages. *See, e.g., Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 839 (Tex. App.—Eastland 1984, no writ) (noting that a litigant may recover its attorney's fees and other reasonable expenses incurred in a third party lawsuit as consequential damages when the "wrongful act or contractual violation involves the claimant in litigation with third parties and forces the claimant to incur expenses to protect his interests"); *see also Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex. App.—Texarkana 2000, pet. denied) (holding that a plaintiff may recover attorney's fees and other reasonable expenses as consequential damages where defendant's wrongful conduct forces plaintiff to prosecute or defend litigation in another proceeding). Consequential

damages are those that "result naturally, but not necessarily, from the defendant's wrongful acts." *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 816 (Tex. 1997).

One example of a Texas case where a party was forced to defend itself in a third party lawsuit and thus entitled to the recovery of its attorney's fees as consequential damages is *Baja Energy, Inc. v. Ball.* Baja operated an oil and gas lease owned by ACR Exploration. *Baja Energy,* 669 S.W.2d at 837. It contracted with Ball Oil Field Service for Ball to plug a well on the lease in October 1980. *Id.* The contract between the parties contained Baja's warranty that it owned the well and would defend title to it. *Id.* In February 1981, ACR assigned the well to Don Shaefer, but the assignment was not recorded. *Id.* Ball plugged the well and removed personal property and equipment pursuant to its contract with Baja. *Id.* Ball contended that it had neither constructive nor actual notice of the assignment prior to its plugging the well. *Id.* Due to the plugging of his well and the removal of personal property, Schaefer sued Ball for trespass and conversion and sued Baja as co-defendant for breach of warranty. *Id.* Ball subsequently filed a third party lawsuit against Baja for contribution and indemnity for any recovery Schaefer might have against Ball. *Id.* at 838. Ball also sought to recover its costs and expenses for defending the suit brought against it by Schaefer as consequential breach of contract damages. *Id.* The trial court entered judgment that Schaefer take nothing against Ball and Baja. *Id.* In addition, the judgment awarded Ball $5,000 in damages against Baja for litigation expenses, including the attorney's fees and loss of time in defending the action by Schaefer. *Id.* On appeal, Baja challenged the award of attorney's fees to Ball. The Eastland Court of Appeals held that Ball was entitled to the

11

recovery of attorney's fees and expenses because it "would not have been forced to defend the suit for trespass and conversion [brought by Schaefer] absent Baja's wrongful act." *Id.* at 839. Similarly, other Texas courts of appeal have followed the *Baja* court's holding. *See, e.g.*, *Lesikar*, 33 S.W.3d at 306; *Mattly v. Spiegel*, 19 S.W.3d 890, 897 (Tex. App.—Houston [14th Dist.] 2003).

While a party under Texas law may recover its attorney's fees and expenses as consequential damages if the wrongful act of another forces it to prosecute or defend itself in a third party lawsuit, this is not the case here. Rather, the attorney's fees and expenses that AFS incurred in the McMahon Jr. Lawsuit were the direct result of AFS's voluntary choice to file that lawsuit instead of pursuing litigation directly against GAIC for its breach of contract. Nothing demonstrates this more clearly than the fact that AFS filed the McMahon Jr. Lawsuit approximately eight months *before* GAIC made its decision to deny coverage on AFS's claim. Thus, there was no decision or wrongful action of GAIC which forced AFS to incur the attorney's fees and expenses associated with the McMahon Jr. Lawsuit. Accordingly, this award to AFS is vacated.

## VI.

We now turn to AFS's assertion that the district court erred by granting GAIC's motion for a judgment as a matter of law on its extra-contractual claims. We review de novo whether a district court properly granted judgment as a matter of law, applying the same legal standard as the district court. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 456 (5th Cir. 2000).

In its complaint, AFS alleged that it was entitled to extra-contractual damages for GAIC's alleged bad faith and violations of the Texas Insurance

09-10262

Code. *See* TEX. INS. CODE ANN. §§ 541.151, 541.152. The district court concluded that GAIC was entitled to a judgment as a matter of law on AFS's extra-contractual claims, solely because AFS failed to plead and prove injuries separate from those that flowed from GAIC's breach of contract.[1]

As noted above, the district court's finding that AFS was entitled to recover the attorney's fees it incurred in the McMahon Jr. Lawsuit as consequential breach of contract damages was erroneous. But, the attorney's fees incurred by AFS in that lawsuit *may* provide the separate injury necessary to support AFS's claim that it is entitled to extra-contractual damages for GAIC's alleged bad faith and violations of the Texas Insurance Code.  Notably, the district court never opined on the merits of AFS's extra-contractual claims nor were they dismissed for lack of evidence that GAIC acted in bad faith or violated the Texas Insurance Code.  For these reasons, we remand this matter to the district court to reconsider, in the first instance, whether there is any basis for AFS's extra-contractual claims.

## VII.

Lastly, AFS asserts that the district court erred because it concluded that the 18% statutory interest which is it entitled to under the Texas Insurance Code for GAIC's breach of contract only continues to accrue until the date of judgment.  Instead, AFS asserts that the 18% percent statutory interest should

---

[1] In its briefing, AFS argues that it did not need to prove a separate injury in order to maintain its extra-contractual claims.  It argues that GAIC's denial of insurance proceeds, standing alone, entitled it  to recover on its extra-contractual claims.  This assertion does not comport with this court's case law.  *See Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (a Texas insurance dispute case, noting that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from wrongful denial of policy benefits").

09-10262

continue to accrue until the claim is paid by GAIC. This court reviews a district court's interpretation of a state statute de novo. *BellSouth Telecomm., Inc. v. Johnson Bros. Corp. of La.*, 106 F.3d 119, 122 (5th Cir. 1997). Under the Texas Insurance Code,

> If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.

TEX. INS. CODE ANN. § 542.060.

While Section 542.060 does not expressly state when the 18% interest stops accruing, the Supreme Court of Texas has noted that such interest only accrues until the date judgment is rendered in the trial court. *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427—28 (Tex. 2004). The district court stopped the accrual of the 18% interest on the date judgment was rendered, which is consistent with what *Mex-Tex* requires. Accordingly, we affirm the district court's judgment.

## VIII.

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment to AFS, the district court's award of statutory interest and attorney's fees to AFS, and the district court's conclusion that statutory interest stops accruing on the date judgment is rendered in the trial court. We VACATE the award of consequential damages to AFS and REMAND AFS's extra-contractual claims to the district court for further proceedings consistent with this opinion. All pending motions before the court are DENIED.