# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 8, 2020

Lyle W. Cayce
Clerk

No. 19-20530

Brooke Adams; Weston Piper,

*Plaintiffs—Appellees*,

*versus*

Fan Chen; Ruikun Tao Tao,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-3948

Before Stewart, Dennis, and Haynes, *Circuit Judges*.
PER CURIAM:*

Brooke Adams and Weston Piper ("tenants") were evicted from their rented townhome and sued Fan Chen and Riukun Tao ("landlords") for retaliation under Texas law and for housing discrimination under the federal Fair Housing Act ("FHA"). After the tenants voluntarily dismissed their claims, the district court held a two-day bench-trial on the landlords'

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

counterclaim against the tenants for breach of the lease agreement and ruled in favor of the tenants. For the following reasons, we VACATE and REMAND.

## I.    FACTUAL AND PROCEDURAL BACKGROUND
### A. Facts

In February 2017, Brooke Adams and Weston Piper leased and moved into a townhouse that was owned by the appellants, Fan Chen and Ruikun Tao. The lease term was for twelve months. Along with paying the security deposit for themselves, the tenants also paid a $250 deposit for their pet dog. In relevant part, Section 9 of the Lease Agreement ("lease"), entitled "PETS," states, "[u]nless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect)." That section further states: "If Tenant violates this Paragraph 9 or any agreement to keep a pet on the property, Landlord may take all or any of the following action [sic]: (1) declare Tenant to be in default of this lease and exercise landlord's remedies under Paragraph 27." Paragraph 27 states, in relevant part: "If Tenant . . . fails to comply with this lease, Tenant will be in default and: (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate."

On December 4, 2017, the couple brought a second dog, Waffles, into the townhome. Adams registered Waffles as an emotional support animal ("ESA") the same day.  The next day, the landlords found out about Waffles and contacted the tenants via text message to inquire about the second dog. The landlords referred the tenants back to the relevant provisions in the "mutually agreed and signed lease" to let them know that the lease had been violated, and they urged the tenants to carefully read the lease to decide how to handle the violation. The text conversation turned sour rather quickly. In her response, Adams stated, "But either way be prepared to tell me who came to you about us because that makes me not comfortable in my home. My birthday was yesterday and that's when the dog came. He was my gift . .

2

. Either way it will get resolved and nothing was intentional." On this same day, Adams reached out to her friend who is a nurse, Crystal Janke, to have her write a note saying that she was prescribed an emotional support animal. On December 6, 2017, Adams texted the landlords pictures of Waffle's ESA registration certificate. In that text thread, she explained that she had been speaking to someone about adjusting her medication for her postpartum depression and anxiety diagnoses and that, as a former real estate agent, she understood her rights under the FHA.

On December 7, 2017, the landlords placed a notice to vacate sign on the door of the townhome informing the tenants that they had one day to vacate the premises. The tenants refused. During this time, Adams provided the landlords a signed letter from Janke explaining that Adams was prescribed an ESA. A few weeks later, on or around December 20, 2017, Chen posted another eviction notice on the door of the townhouse and then initiated an eviction action against the tenants on December 22, 2017. The tenants moved out of the townhome on December 31, 2017. A few weeks later, in January 2018, Chen filed a second eviction lawsuit that was dismissed as moot because the tenants had already moved out of the home. Shortly after this, Tao began threatening Adams's business associates with legal action for photographs that were taken at the townhouse.

## B. Procedural History

The tenants filed suit in Texas state court a month after vacating the townhouse alleging that Chen failed to return their security deposit and withheld it in bad faith. Chen answered with defenses and counterclaims, among them an allegation that the tenants breached Sections 9, 12D, and 14 of the lease. During the course of these proceedings, (a) Tao filed a complaint in April 2018 with Child Protective Services claiming that Adams sexually abused her one-year-old son, sold sex for profit, and other unbecoming acts; (b) Tao also filed a complaint with the Texas Medical Board against Janke, which coincidentally resolved when, in concert with the landlords' lawyers, Janke submitted a sworn affidavit retracting the statements in the letter that

she wrote on Adams's behalf; and (c) Tao found and contacted the tenants' new landlord and told him that she and her husband evicted the couple from their townhome and were engaged in ongoing litigation with them.

The tenants amended their suit to add Tao as a defendant and included claims for intentional infliction of emotional distress, harassment, and an allegation that Tao violated the FHA in engaging in such conduct. The landlords then removed the case to federal court pursuant to 28 U.S.C. § 1441(a) and asserted an additional counterclaim of malicious prosecution. The district court issued a management order requiring the parties to confer with each other to try to reach a settlement. As agreed to by the parties, the tenants subsequently voluntarily withdrew their claims, including their FHA claim, against the landlords. However, they maintained their defenses (retaliation, prior material breach, and estoppel/laches) and affirmative defenses (failure to mitigate damages) against the landlords' counterclaims.

After a two-day bench trial, the district court ruled in favor of the tenants, finding that they did not breach the lease but that the landlords breached it. Additionally, the district court awarded the tenants $45,627.69 in attorney's fees and the return of their security deposit. At the end of the second day of trial, the district court orally issued a permanent injunction against the landlords to enjoin them from contacting the tenants, their employers, and anyone associated with them. The landlords timely appealed.

## II.    STANDARD OF REVIEW

Following a bench trial, appellate courts review legal issues de novo and findings of fact for clear error. *See Guzman v. Hacienda Records and Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quotations omitted). A finding is clearly erroneous when the reviewing court, on the whole of the evidence, is left with the definite and firm conviction that a mistake has been committed though there may be evidence to support the district court's finding. *Id.* (quotations omitted). However, "great deference" is owed to the district court's findings; when "there are two

permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *In re Luhr Bros., Inc.*, 157 F.3d 333, 338 (5th Cir. 1998)).

When factual findings are based on credibility determinations, "Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). This deference does not insulate the district court's findings from review merely because the district court calls them "credibility determinations." *Id.* "Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.* In the face of such factors, "the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." *Id.* But, if the finding is based on the court's decision to credit one of two or more witnesses that have all told "coherent and facially plausible stor[ies] that [are] not contradicted by extrinsic evidence," that finding can virtually never be clear error. *Id.*

## III.    DISCUSSION

### A. Jurisdiction

"A district court has 'wide discretion' in deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999)). At bottom, this is a straightforward landlord-tenant dispute. The case was removed to federal court prior to the tenants' voluntary dismissal of their claims. Despite the voluntary dismissal, the district court decided not to remand this case back to the state trial court. Thus, we retain jurisdiction over the matter.

### B. The district court incorrectly found that the tenants did not breach the lease agreement.

The landlords argue that the tenants did not properly exercise their rights under the FHA because the tenants presented the ESA documents after they had already been caught with Waffles in the home without the landlords' express written permission. Accordingly, they argue that the tenants violated Section 9 of the lease agreement. The tenants counter that they did not breach the lease agreement because they exercised their rights under the FHA to bring Waffles into the home as an emotional service animal. An action for a breach of lease requires a plaintiff to show (1) the existence of a valid lease agreement, (2) that the plaintiff performed or tendered performance, (3) that the defendant breached an obligation under the lease, and (4) damages that resulted from the breach. *See Dupree v. Boniuk Interests, Ltd.*, 472 S.W.3d 355, 364 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We agree with the landlords that they conclusively proved that the tenants breached the lease.

Regarding the first two prongs, the validity of the lease and the landlords' performance of the lease, *i.e.*, the tenants' possession of the townhome for ten months, are undisputed. As for the third prong, it is clear from the record and from the district court's own findings that the tenants breached Section 9 of the lease because Waffles was brought into the home prior to receiving express written permission from the landlords.  As for the final prong, the landlords assert that this requirement is satisfied in the form of their loss of unauthorized pet rent, unpaid rent, and the re-letting fee paid to the leasing agent.  While the extent of these damages may be disputed, there is no doubt that the tenants breached the lease. Likewise, we need not decide whether there were other violations of other lease provisions. Now, we must decide whether the tenants' breach was excusable.

Section 92.331(a)(1) of the Texas Property Code prohibits a landlord from taking certain specified retaliatory actions against a tenant "because the tenant in good faith exercises or attempts to exercise against a landlord a right . . . granted to the tenant by . . . federal or state statute." In relevant part, subsection (b) specifies such prohibited retaliatory conduct such as "(1) filing

an eviction proceeding . . .; (2) depriving the tenant of the use of the premises, except for reasons authorized by law; . . . (4). . . terminating the tenant's lease; or (5) engaging, in bad faith, in a course of conduct that materially interferes with the tenant's rights under the tenant's lease." TEX. PROP. CODE § 92.331(b)(1)–(2), (4)– (5). Retaliation by a landlord can be asserted as a defense in an eviction suit. *Id.* at § 92.335.

Notwithstanding that this is not an eviction suit, we determine that the retaliation defense is inapplicable here because we are not convinced that the tenants made a good faith attempt to exercise their rights under the FHA. *See Id.* at § 92.331(a)(1). The record shows that Adams did not text Tao pictures of Waffles' ESA certification until two days after she brought Waffles into the home. Additionally, the prerequisite actions requested by the landlords in order for the tenants to have an additional pet in the home was not a blanket prohibition such that a reasonable accommodation under the FHA was compulsory. *See Chavez v. Aber*, 122 F. Supp. 3d 581, 593–97 (W.D. Tex. 2015) (finding that the plaintiffs' requested accommodation to have the blanket "no pets policy" waived for her emotional service dog was reasonable under the FHA). The landlords only required their prior express written permission to have an additional pet in the home—the tenants did not have that permission.

Regarding the landlords' post-eviction conduct, the landlords argue that those actions (*i.e.*, contacting Child Protective Services, contacting the tenants' subsequent landlord, etc.) do not touch on Adams's and Piper's rights under the Lease. We decline to opine whether other claims are available. For the purposes of this appeal, these actions simply do not provide the tenants with a defense to the landlords' claim that they breached the terms of the lease.

In sum, we vacate the district court's finding in favor of the tenants on the breach of lease claim. Accordingly, we vacate the permanent injunction issued against the landlords. We remand for the district court to determine in the first instance whether Landlords have demonstrated

damages sufficient to make out a claim for breach of lease and the amount of damages that should be awarded. *See Dupree*, 472 S.W.3d at 364 (requiring plaintiff to prove "damages that resulted from the breach" to succeed on a breach-of-lease claim); *see also Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 808 (5th Cir. 2010) (remanding to the district court to reconsider in the first instance issue that it "never opined on the merits of"). The record shows that at the trial level, the tenants pled as an affirmative defense that the landlords failed to mitigate damages. *See McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 277–78 (Tex. App. 2006) (citing *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 300 (Tex. 1997)). The tenants' evidence of the landlords' failure to mitigate must show the amount by which the landlord could have reduced his damages. *Id.* at 277. Accordingly, on remand, the district court should also determine whether the landlords sufficiently mitigated their damages incurred by the tenants' breach.

## C. The district court improperly found that the landlords violated the Fair Housing Act.

The district court's finding that the landlords violated the federal FHA is immaterial to whether the tenants breached the lease. In turn, we vacate. The record clearly shows that the tenants' FHA claim was voluntarily dismissed shortly after the case was removed to federal court. Because the FHA claim was not before the court, we vacate.

## IV.   CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND for reconsideration of the issue of the landlords' mitigation of damages and attorney's fees, consistent with this opinion.