# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20195

United States Court of Appeals
Fifth Circuit

**FILED**
August 29, 2018

Lyle W. Cayce
Clerk

LYDA SWINERTON BUILDERS, INCORPORATED,

Plaintiff-Appellee/Cross-Appellant

v.

OKLAHOMA SURETY COMPANY,

Defendant-Appellant/Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

We withdraw our prior opinion, *Lyda Swinerton Builders, Inc. v. Oklahoma Surety Co.*, 877 F.3d 600 (5th Cir. 2017), and substitute the following in light of the Texas Supreme Court's opinion on rehearing in *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (2018).

This case involves several issues of Texas law relating to an insurer's duty to defend and the damages that an insured may recover when an insurer breaches that duty. The district court, after disposing of much of the case through a series of partial summary judgment rulings and conducting a bench trial on one remaining claim, issued a final judgment that largely (though not

No. 16-20195

entirely) favored the insured. The insurer and the insured now cross-appeal from that judgment. We AFFIRM in part and REVERSE in part.

## I. BACKGROUND

### A. The Project and the Subcontract

Lyda Swinerton Builders, Inc. ("LSB") is a Texas-based general contractor. In November 2003, LSB was hired to build a ten-story office building in College Station, Texas. LSB, in turn, hired numerous subcontractors, among them A.D. Willis Company, Inc. ("Willis"). The subcontract agreement between LSB and Willis, which dates to April 2005, defined the scope of Willis' work as "ROOFING, ORNAMENTAL METAL, METAL WALL PANELS, and ROUGH CARPENTRY." The subcontract required Willis to maintain a general liability insurance policy designating LSB as an additional insured with respect to liabilities arising out of Willis' work under the subcontract. The subcontract also contained an indemnification provision, which read:

> TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR AGREES TO DEFEND, HOLD HARMLESS AND UNCONDITIONALLY INDEMNIFY CONTRACTOR AND OWNER . . . AND ALL PARTIES WHOM CONTRACTOR IS REQUIRED TO INDEMNIFY PURSUANT TO THE TERMS OF THE CONTRACT DOCUMENTS, AGAINST AND FOR ALL LIABILITY, COSTS, EXPENSES, CLAIMS, LIENS, CITATIONS, PENALTIES, FINES, ATTORNEYS' FEES, LOSSES, AND DAMAGES WHICH CONTRACTOR MAY AT ANY TIME SUFFER OR SUSTAIN OR BECOME LIABLE FOR BY REASON OF ANY ACCIDENTS, DAMAGES, OR INJURIES EITHER TO THE PERSONS OR PROPERTY OR BOTH OF CONTRACTOR, OWNER OR SUBCONTRACTOR, OR OF THE WORKERS OF SUCH PARTIES, OR OF ANY OTHER PARTIES, OR TO THE PROPERTY OF ANY PARTY, IN ANY MANNER ARISING OUT OF OR RESULTING FROM SUBCONTRACTOR'S PERFORMANCE OR FAILURE TO PERFORM HEREUNDER, OR FAILURE OR DEFECTS IN MATERIALS OR GOODS SUPPLIED BY OR ON BEHALF OF SUBCONTRACTOR,

2

No. 16-20195

INCLUDING, BUT NOT LIMITED TO, ANY NEGLIGENT ACT OR OMISSION OR CLAIM INVOLVING STRICT LIABILITY OR NEGLIGENCE PER SE OF CONTRACTOR OR OWNER, THEIR OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, CONTRACTOR'S SURETY AND ALL PARTIES WHOM CONTRACTOR IS REQUIRED TO INDEMNIFY PURSUANT TO THE TERMS OF THE CONTRACT DOCUMENTS.

THE COVERAGE OF ANY INSURANCE POLICY REQUIRED HEREIN OR ACTUALLY CARRIED BY SUBCONTRACTOR SHALL NOT LIMIT THE EXTENT OF SUBCONTRACTOR'S LIABILITY UNDER THE FOREGOING INDEMNITY.

Before returning the signed subcontract to LSB, Willis' president made several handwritten changes to the document, including striking out the portion of the indemnification provision indicated above. LSB did not countersign the subcontract, and there is no evidence in the record that LSB noticed or objected to Willis' alterations.

## B.  The OSC Policy

Willis subsequently obtained a commercial general liability insurance policy from Oklahoma Surety Company ("OSC") with a policy period of February 1, 2006 to February 1, 2007. The OSC Policy identified Willis as the "Named Insured" and as a "COMMERCIAL ROOFING CONTRACTOR." The policy provided that:

[OSC] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [OSC] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [OSC] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [OSC] may, at [its] discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

3

The policy contained an endorsement naming "Lyda Builders & its parent & affiliated companies" as additional insureds, "but only with respect to liability directly attributable to [Willis'] performance of '[Willis'] work' for [LSB and LSB's parent and affiliates]." Elsewhere, the policy defined Willis' "work" as "[w]ork or operations performed by [Willis] or on [its] behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." The endorsement also stated that it applied "only when [Willis] ha[s] agreed by written 'insured contract' to designate [LSB and its parents and affiliates] as an additional insured subject to all provisions and limitations of this policy." The term "insured contract" was defined to include "[t]hat part of any other contract or agreement pertaining to [Willis'] business . . . under which [Willis] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." The term "property damage" was defined as:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

## C. The Underlying State-Court Lawsuit

In January 2005, the owner of the College Station project assigned its interest in the contract with LSB to Adam Development Properties, L.P. ("ADP"). On February 12, 2008, ADP filed an original petition in Texas state court against LSB and LSB's parent company. That petition sought damages against LSB for breach of contract and alleged, in pertinent part, that:

   ▪ LSB entered into the contract for the project on or about November 17, 2003; the date of commencement of the project was December 1, 2003;

4

and the projected deadline for substantial completion was January 28, 2005.

- "It has now been *well over four years* since commencement of the project, and *approximately three years* since the contractual deadline for substantial completion expired, and the project is still far from being substantially complete. Throughout the course of the project, LSB's performance of the Work under the contract documents has been marked by numerous material deficiencies. Without limitation, the portions of the Work affected by such deficiencies include the exterior granite façade, the curtain wall systems, the punch window systems, the precast panel connections, the roof, the dormers, the rotunda, the joint sealant, the drywall, the fire protection systems, the HVAC systems, and the electrical systems."

- "In addition, LSB has consistently failed to comply with its contractual obligations to adequately supervise work performed by subcontractors; to supply sufficient skilled workers and suitable materials necessary to complete the Work in accordance with the contract documents; to take adequate protective measures to prevent damage to the Work resulting from exposure to the elements; to timely provide monthly project reports and project schedules; to promptly pay monies owed to subcontractors; and to resolve, remove or discharge liens filed against the project by subcontractors."

- "In the months prior to February 1, 2008, many of LSB's subcontractors had already removed their crews, heavy equipment, machinery, and tools from the project jobsite. Since that date, LSB and the few remaining subcontractors still at the jobsite removed most of their heavy equipment, machinery, and tools . . . ."

No. 16-20195

▪ For these and other reasons, "on February 13, 2008, pursuant to the terms of the contract documents, ADP terminated the contract."

In April 2011, LSB filed third-party petitions against various companies, including Willis. On November 17, 2011, ADP filed its first amended petition, the factual allegations of which were essentially the same as those in the original petition. In addition to the breach of contract claim, the first amended petition added claims against LSB for negligence and misrepresentation. The negligence claim asserted that LSB breached its duty to "exercise ordinary care in connection with the project, including but not limited to the duty to exercise ordinary care in the supervision of its subcontractors," thereby "caus[ing] property damage separate and apart from its scope of work under the contract documents." The first amended petition referred to Willis as a third-party defendant, but did not expressly identify it as a subcontractor.

On October 31, 2012, ADP filed a second amended petition. That petition was very similar to the previous petitions. This time, however, ADP identified Willis (and others) as "Third-Party Defendants" and incorporated specific references to them throughout the pleading. In particular, the second amended petition alleged:

▪ "Throughout the course of the project, [LSB]'s performance of the work under the contract documents (and the work of the Third-Party . . . Defendants, for which [LSB] is responsible) was marked by numerous material deficiencies. These deficiencies were a product of [LSB]'s (and the Third-Party . . . Defendants', for which [LSB] is responsible) negligence. This negligence caused loss of use of the building and property damage separate and apart from [LSB]'s scope of work under the contract documents. Without limitation, the portions of the work damaged and affected by such deficiencies include the exterior granite façade, the curtain wall systems, the punch window systems, the precast

6

panel connections, the roof, the dormers, the rotunda, the joint sealant, the drywall, the fire protection systems, the HVAC systems, and the electrical systems."

▪ With respect to the negligence claim against LSB, the second amended petition again alleged that LSB breached its "duty to exercise ordinary care in the supervision of its subcontractors" and added that LSB's "negligence (and the negligence of the Third-Party . . . Defendants, for which [LSB] is responsible) proximately caused property damage separate and apart from [LSB]'s scope of work under the contract documents."

## D.  LSB's Requests for Defense

In a letter dated August 18, 2011, LSB requested that OSC provide it with "defense and indemnification as an additional insured" under the OSC Policy in connection with ADP's original petition. OSC denied that request in October 2011. LSB requested that OSC provide it with a defense against the first amended petition on July 6, 2012 and against the second amended petition on November 21, 2012. OSC denied both of those requests as well. LSB also requested defense and indemnification from various other insurance companies, some of which had issued policies directly to LSB and others of which had issued policies to LSB's subcontractors. Like OSC, many of these insurers denied LSB's requests.

## E.  The Federal Suit

In June 2012, one of the insurers that had denied LSB's request for defense filed a declaratory judgment action in federal district court, naming ADP, LSB, and another party as defendants. LSB thereafter filed a third-party complaint in the same action against OSC and seven other insurers. In its second amended third-party complaint, LSB sought damages and declaratory relief against OSC and the other insurers for: breach of contract based on their

No. 16-20195

failure to defend LSB in the state court lawsuit; violations of Chapter 541 of the Texas Insurance Code; and violations of Texas' Prompt Payment of Claims Act ("PPCA").

The state and federal lawsuits proceeded simultaneously for a time, but by some point in 2013, all the claims had been settled, save for those between LSB and OSC. In June 2014, the district court granted partial summary judgment in LSB's favor, finding that OSC owed a duty to defend LSB against ADP's second amended petition. In June 2015, the district court decided several additional motions for partial summary judgment, ruling that: OSC owed a duty to defend LSB under ADP's original petition; OSC breached its duty to defend LSB and was therefore liable to LSB for damages, including defense fees and costs; and OSC violated the PPCA by breaching its duty to defend, thereby entitling LSB to recover damages for that violation as well. The court denied OSC's motion for partial summary judgment, which asserted, among other things, that OSC did not have a duty to defend LSB due to an insurance law concept known as the "anti-stacking rule." After conducting a bench trial on LSB's claim for violations of Chapter 541 of the Texas Insurance Code, the district court ruled that LSB had not met its burden of proving that it had "suffered injury separate and apart from the denial of benefits it was owed under the OSC Policy." Concluding that this circuit's precedent precluded LSB from recovering extra-contractual damages in the absence of such "independent injury," the district court rendered judgment in favor of OSC on that claim.

On September 25, 2015, the district court entered a final judgment and ordered OSC to pay LSB:

- $655,600.27 for breaching the duty to defend and violating the PPCA;
- a statutory penalty of 18 percent per annum under the PPCA, with $296,209.69 having accrued through August 20, 2015, and $323.32

accruing each day thereafter "until the date of payment of this judgment"; and

- reasonable attorney's fees and costs.

On February 23, 2016, the district court entered an amended final judgment that included an award of pre-judgment interest to LSB. OSC then filed a motion to alter, amend, or correct the amended final judgment, which the district court denied.

This appeal followed.

## II.  DISCUSSION

OSC appeals several of the district court's summary judgment rulings and two of its damages rulings. LSB cross-appeals from the district court's ruling denying its claim under Chapter 541 of the Texas Insurance Code.

### A.  OSC's Appeal of the Summary Judgment Rulings

OSC challenges the district court's grant of summary judgment in favor of LSB on OSC's duty to defend, OSC's breach of that duty, and OSC's liability under the PPCA. OSC also appeals the denial of its partial motion for summary judgment based on the anti-stacking rule. We review grants and denials of summary judgment *de novo*. *United States v. Corpus*, 491 F.3d 205, 209 (5th Cir. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In this diversity case, Texas substantive law and federal procedural law apply. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

### 1.  OSC's Duty to Defend

Under Texas law, the duty to defend obligates an insurer to "defend the insured in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy.'" *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins.*

*Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). "The duty to defend depends on the language of the policy setting out the contractual agreement between insurer and insured." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 & n.28 (Tex. 2009) ("A defense of third-party claims provided by the insurer is a valuable benefit granted to the insured by the policy," which protects the insured "'against the expense of any suit seeking damages' covered by the policy." (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 25 (Tex. 1965))). Whether an insurer has a duty to defend its insured is a question of law. *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009).

### a.  LSB's Status as an "Additional Insured"

To decide whether OSC had a duty to defend LSB against ADP's lawsuit, we must first determine whether LSB qualified as an "additional insured" under the OSC Policy. *See ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840–41 (5th Cir. 2012) (considering first the question of "additional insured" status and then determining whether the allegations in the underlying suit triggered the insurer's duty to defend the additional insured); *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) (same). Settled rules of contract interpretation apply to this determination. *See ACE Am. Ins.*, 699 F.3d at 842. Under Texas law, contract terms are given their plain, ordinary meaning, considered in light of the contract as a whole, unless the contract itself shows that the parties intended the terms to have a different, technical meaning. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158–59 (Tex. 2003). Ambiguous insurance policy language must be read "strictly against the insurer and liberally in favor of the insured." *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 859 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

As mentioned above, the OSC Policy obligates OSC to defend Willis and any "additional insured" against any suit seeking damages for "property damage" covered by the policy. According to the endorsement, LSB is an "additional insured," provided that Willis has "agreed by written 'insured contract' to designate" LSB as such. The district court concluded that the subcontract between LSB and Willis satisfied this requirement. We agree.

OSC maintains that the subcontract cannot be a "written 'insured contract'" because LSB did not countersign it. However, the OSC Policy does not expressly state that the contract must be signed by all the parties to it, and we do not view the word "written" as imposing that requirement. *See Millis Dev. & Constr., Inc. v. Am. First Lloyd's Ins. Co.*, 809 F. Supp. 2d 616, 627 (S.D. Tex. 2011) (holding that an additional insured provision "only require[d] that both parties agree in a written contract that one of the parties is to be an additional insured," not that "both parties be signers of the written contract in order for one of the parties to be considered an additional insured"); *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) (courts must give the words in an insurance policy "their plain meaning, without inserting additional provisions into the contract"). To be *enforceable*, a contract requires mutual assent, and "[e]vidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). But as this court has held, a party may qualify as an additional insured even if the "insured contract" is not enforceable. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011). "Additional insured" status depends, not on the enforceability of the "insured contract," but instead on whether the named insured "*agreed to* 'assume the tort liability of another party.'" *Id.* (emphasis in original) (citing *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 492–93 (5th Cir. 2000)). OSC contends the subcontract is deficient in this regard

11

due to Willis' handwritten modification of the indemnification language. Even if the stricken language is omitted, however, the provision still states that Willis agrees to "unconditionally indemnify" LSB "to the fullest extent permitted by law" for "all liability" that LSB incurs for damages "in any manner arising out of or resulting from [Willis'] performance or failure to perform" under the subcontract. Thus, with the exception of a subset of claims involving strict liability and negligence per se, Willis assumed liability for various tort claims that third parties might bring against LSB. Since the OSC Policy does not say that Willis must assume *all* of LSB's tort liability, we conclude that the subcontract satisfies the policy's definition of an "insured contract." *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) (holding that a party "assumed liability" under a contract when it undertook obligations beyond those imposed by "general law"); *City of College Station v. Star Ins. Co.*, 735 F.3d 332, 340 (5th Cir. 2013) (holding that policy provision excluding liability arising out of "any principle of eminent domain, condemnation proceeding, [or] inverse condemnation" could not "reasonably be read to extend to liability arising out of *all* zoning decisions," and noting that ambiguity must be construed in favor of the insured).

### b. The Eight-Corners Rule

Since LSB qualifies as an additional insured under the OSC Policy, we turn to whether the allegations in ADP's lawsuit were sufficient to trigger OSC's duty to defend LSB. Texas law uses the "eight-corners" or "complaint-allegation" rule to determine whether a liability insurer has a duty to defend an insured against a third-party lawsuit. *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 259 (5th Cir. 2017); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). Under that rule, courts look to the facts alleged within the four corners of the petition (or complaint) in the underlying lawsuit, "measure them against the language

within the four corners of the insurance policy, and determine if the facts alleged present a matter that could *potentially* be covered by the insurance policy." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (emphasis added).

The eight-corners rule is "very favorable to insureds." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). The allegations in the petition must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend. *Nokia*, 268 S.W.3d at 491.

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

*Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport*, 387 S.W.2d at 26); *see also Gore Design*, 538 F.3d at 369 ("When in doubt, defend."). If the petition pleads facts sufficient to create the *potential* of covered liability, then the insurer has a duty to defend the *entire* case, even if some of the alleged injuries are *not* covered. *City of College Station*, 735 F.3d at 336. While courts may not read facts into the petition or speculate as to factual scenarios which might trigger coverage under the policy, they "may draw inferences from the petition that may lead to a finding of coverage." *Gore Design*, 538 F.3d at 369 (internal quotation marks and citation omitted). The truth or falsity of the allegations is immaterial: "even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend." *Nokia*, 268 S.W.3d at 491 (internal quotation marks,

brackets, and citation omitted). Moreover, "[w]hen reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions." *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (citing *Ewing Constr.*, 420 S.W.3d at 33); *accord Nat'l Union Fire Ins.*, 939 S.W.2d at 141–42 ("'[T]he court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'" (internal quotation marks and citation omitted)).

Applying the eight-corners rule, we conclude that OSC had a duty to defend LSB against ADP's original petition, as well as the first and second amended petitions.[1] The original petition alleged that LSB was responsible for numerous "material deficiencies" affecting various portions of the project, including "the roof" and structures on or near the roof. In addition, the petition alleged that LSB failed to "adequately supervise work performed by subcontractors; to supply sufficient skilled workers and suitable materials necessary to complete the [w]ork in accordance with the contract documents; [and] to take adequate protective measures to prevent damage to the [w]ork resulting from exposure to the elements." As noted above, the OSC Policy defines OSC's duty to defend as encompassing any suit against an insured for "property damage" to which the policy applies, makes LSB an additional insured "with respect to liability directly attributable" to Willis' performance of its work for LSB, and expressly identifies Willis as a "COMMERCIAL ROOFING CONTRACTOR." Reading the original petition liberally, and

---

[1] The district court awarded LSB damages based on defense costs it incurred when each of the three petitions was the live pleading. Because OSC's liability depends on whether it had a duty to defend LSB at the time those costs were incurred, we must apply the eight-corners rule to all three petitions. *See Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) (noting that "[a] complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty" and "a complaint which does allege a cause of action under the policy so as to create a duty to defend may be amended so as to terminate the duty").

resolving any doubts in LSB's favor, there was at least a *potential* that ADP's suit fell within the policy's scope of coverage. That was sufficient to trigger OSC's duty to defend under the eight-corners rule. And since ADP's amended petitions contained *more* factual detail than the original petition, OSC had a duty to defend LSB against them as well.

OSC maintains that the original and first amended petitions failed to sufficiently allege "property damage." We disagree. The petitions' factual allegations, which refer to numerous deficiencies in the work performed on the project, plainly fit within the policy's broad definition of "property damage." Although OSC suggests that the original petition did not allege "property damage" because it sought to recover only for breach of contract, under the eight-corners rule, "[i]t is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct." *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (emphasis in original).

OSC also argues that the original and first amended petitions did not allege that Willis specifically caused any of the property damage. It is true that those petitions did not expressly refer to Willis, but they did indicate that property damage resulted from the actions of "subcontractors" and specifically mentioned deficiencies in and around the building's roof. Reading those allegations in conjunction with the OSC Policy, which expressly identified Willis as a "commercial roofing contractor," it requires no more than a logical inference to conclude that at least some of the alleged property damage was potentially attributable to Willis. *See Global Sun Pools, Inc. v. Burlington Ins. Co.,* No. 05-03-00765-CV, 2004 WL 878283, at *2 (Tex. App.—Dallas Aug. 23,

15

No. 16-20195

2004, no pet.);[2] *Liberty Mutual Ins. Co. v. Graham,* 473 F.3d 596, 601 (5th Cir. 2006); *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 644–45 (Tex. 2005).

The allegations in all three petitions were also sufficient to support the inference that "property damage" potentially occurred during the policy period. The original petition alleged that the project commenced on December 1, 2003, that some amount of work was done on the project thereafter, and that the project was effectively abandoned by February 13, 2008. One could reasonably conclude from these allegations that ADP potentially sought to recover for "property damage" that occurred sometime during the policy period of February 1, 2006 to February 1, 2007. Clearly, none of the allegations negated that possibility. *See GEICO Gen. Ins. Co. v. Austin Power Inc.*, 357 S.W.3d 821, 825 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("Nothing in the pleadings negates the possibility that the injury occurred between December 31, 1969 and December 31, 1970."). As ADP's suit did not involve allegations of "inherently undiscoverable" damages that were only detected outside of the policy period, OSC's reliance on *Don's Building Supply, Inc. v. OneBeacon Insurance Co.*, 267 S.W.3d 20, 30 (Tex. 2008), is misplaced.

Because our application of the eight-corners rule relied solely on the policy and the petitions, we need not consider OSC's objection to the use of extrinsic evidence. *See generally Ooida Risk*, 579 F.3d at 475–76 (recognizing exception to the general rule that extrinsic evidence cannot be used in conjunction with the eight-corners rule).

---

[2] Although unpublished, this court cited and relied upon *Global Sun Pools* in *Gore Design*, 538 F.3d at 369–70. In Texas, all opinions and memorandum opinions issued by the state courts of appeals in civil cases after January 1, 2003 have precedential value. TEX. R. APP. P. 47.7 cmt.; *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 n.3 (5th Cir. 2010).

**c. The Anti-Stacking Rule**

In the insurance context, the term "stacking" refers to "taking policy limits from multiple, but not overlapping, policies potentially covering the same lawsuit and adding those limits together." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 556 (5th Cir. 2008). In *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994), the Texas Supreme Court adopted an "anti-stacking rule" that prohibits an insured from stacking the coverage limits of multiple, consecutive policies when "a single claim involving indivisible injury" extends across several distinct policy periods. *Id.* at 853–55. In those circumstances, "the insured's indemnity limit [is] whatever limit applied at the single point in time during the coverage periods of the triggered policies when the insured's limit was highest." *Id.* at 853–55.

OSC argues that *Garcia*'s anti-stacking rule precludes LSB's claims in this case. Specifically, OSC asserts that another insurer, CNA, issued general liability policies to Willis providing coverage from February 1, 2007 through February 1, 2013. OSC characterizes the property damage underlying ADP's lawsuit as an indivisible injury that extended across the periods of coverage provided by the OSC Policy and the policies issued by CNA. Moreover, OSC asserts that LSB selected CNA to provide a "complete defense" against the state court suit. From this, OSC concludes that allowing LSB to recover defense costs from it would be permitting it to "stack" the OSC Policy and one or more of the CNA policies.

It is not clear that the Texas Supreme Court would extend *Garcia*, which involved an insurer's duty to indemnify, to the present situation, which

involves a claim based on an insurer's duty to defend.[3] *See D.R. Horton–Texas*, 300 S.W.3d at 743 ("[T]he duty to defend and the duty to indemnify 'are distinct and separate duties.'" (quoting *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004))). We need not decide that question, however, because even assuming that the anti-stacking rule has some application in the duty-to-defend context, there is no basis for applying it in this particular case. OSC has not pointed to record evidence showing that LSB "selected" CNA for defense purposes *before* OSC denied LSB's first request for defense in October 2011. If LSB sought a defense from CNA only *after* OSC's wrongful denial, then applying the anti-stacking rule would reward OSC for shirking its legal duty. Applied on a wider scale, such a rule would incentivize wrongful denials of requests for defense and would shift defense costs onto insurers who undertake their duty to defend in good faith. Nothing in *Garcia* supports such an inequitable result.

### d. Conclusion

Because there are no genuine issues of material fact and LSB is entitled to judgment as a matter of law, we affirm the district court's grant of summary judgment in LSB's favor on the duty to defend and OSC's breach of that duty. We also affirm the district court's denial of OSC's motion for partial summary judgment based on the anti-stacking rule.

---

[3] Indeed, the only case OSC cites that applied anti-stacking principles to the duty to defend involved a policy that subjected the duty to defend to an eroding coverage provision. *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 559–60 (5th Cir. 2008) (explaining impact of policy language that subjects duty to defend to eroding policy limits). The OSC Policy does not contain such a provision, and in cases like this, Texas courts have rejected the argument that the anti-stacking rule overcomes "the notion that each of several insurers on concurrently triggered policies is obligated to provide a full defense to the insured." *Tex. Prop. & Cas. Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 606–07 (Tex. App.—Austin 1998, no pet.); *see also Md. Cas. Co. v. S. Tex. Med. Clinics, P.A.*, No. 13-06-89-CV, 2008 WL 98375, at *8 (Tex. App.—Corpus Christi Jan. 10, 2008, pet. denied).

**2. OSC's Liability under the Prompt Payment of Claims Act**

Under the PPCA, an insurer that is "liable for a claim under an insurance policy" and fails to promptly respond to, or pay, the claim in accordance with the statute becomes liable to the policy holder or beneficiary for the amount of the claim, as well as an 18 percent per annum statutory penalty and reasonable attorney's fees. TEX. INS. CODE §§ 542.051–.061. To recover under the PPCA, an insured must establish that: "(1) a claim was made under an insurance policy, (2) the insurer is liable for the claim, and (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim." *United Nat. Ins. Co. v. AMJ Investments, LLC*, 447 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) (citing *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 291 (Tex.  2001)).  Defense  costs incurred by an insured as a result of an insurer's breach of its duty to defend are a "claim" within the meaning of the PPCA. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 20 (Tex. 2007).

The sole basis for OSC's challenge to the district court's grant of summary judgment in favor of LSB under the PPCA is its assertion that LSB failed to establish that OSC either had a duty to defend LSB or that OSC breached that duty. Having just rejected those assertions, we affirm. *See Admiral Ins. Co. v. Petron Energy, Inc.*, 1 F. Supp. 3d 501, 5010 (N.D. Tex. 2014) ("Because Plaintiff had a duty to defend, and breached that duty, the Court necessarily concludes that Plaintiff violated the Prompt Payment of Claims Act by erroneously rejecting Defendants' requests for defense and delaying payment of fees and expenses incurred in the Oklahoma Litigation.").

**B.  LSB's Cross-Appeal**

LSB seeks reversal of the district court's ruling denying its claim for extra-contractual damages under Chapter 541 of the Texas Insurance Code. On appeal from a decision rendered after a bench trial, a district court's

findings of fact are reviewed for clear error, while its conclusions of law and rulings on mixed questions of law and fact are reviewed *de novo*. *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009).

Chapter 541 prohibits insurers from engaging in various "unfair methods of competition" and "unfair or deceptive acts or practices." TEX. INS. CODE §§ 541.051–.061. A person "who sustains actual damages . . . caused by" such conduct may recover "the amount of actual damages, plus court costs and reasonable and necessary attorney's fees," with treble damages available if the insurer is found to have committed the prohibited acts "knowingly." *Id.* §§ 541.151–.152; *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 441 (Tex. 2012). Under the Insurance Code, "actual damages" are "'those damages recoverable at common law'" that "the insured sustains 'as a result of' the statutory violation." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489, 492 (Tex. 2018) (quoting *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex. 1995), and *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex. 1985)); *accord Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816–17 (Tex. 1997) ("actual damages" include both "direct" and "consequential" damages). Since damages for Insurance Code violations are a creature of statute, not the insurance policy, they are "extra-contractual" in nature. *See Menchaca*, 545 S.W.3d at 489 ("An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties. . . . A claim for breach of the policy is a 'contract cause of action,' while a common-law or statutory bad-faith claim 'is a cause of action that sounds in tort.'" (citations omitted)).

LSB claimed that OSC violated the Insurance Code by knowingly misrepresenting the OSC Policy's coverage so as to avoid defending LSB in the state-court suit, and that this violation caused LSB to incur defense costs as extra-contractual damages. *See* TEX. INS. CODE §§ 541.060(a)(1), 541.061. After

holding the bench trial, the district court found that LSB had "adduced no evidence that it suffered injury separate and apart from the denial of benefits it was owed under the OSC Policy." Concluding that this circuit's caselaw required LSB to establish such an independent injury in order to obtain extra-contractual damages under the Insurance Code, the district court rendered judgment for OSC on the claim.

In *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex. 1988), the Texas Supreme Court held that when an insurer improperly withholds policy benefits, an insured can recover, "at minimum," the amount of the wrongly denied benefits as actual damages under the Insurance Code. *Id.* at 136. The insured need not show any injury independent from the denied benefits in order to obtain such extra-contractual damages. *Id.* Following *Vail*, the Texas high court decided two cases in which it rejected efforts by insureds to recover policy benefits as extra-contractual damages where coverage under the policies had *not* been established. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."); *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 196 (Tex. 1998) (rejecting insured's claims for extra-contractual damages and expressing no opinion on the issue of coverage).

In *Parkans International LLC v. Zurich Insurance Co.*, 299 F.3d 514 (5th Cir. 2002), this circuit, citing *Castañeda*, stated that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Id.* at 519. *Parkans* involved an insured whose claims were not covered by the insurance policy. *Id.* at 517–18. Then, in *Great American Insurance Co. v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800 (5th Cir. 2010), this court, relying on *Parkans*, expressly

rejected an insured's argument that it was not required to "prove a separate injury in order to maintain its extra-contractual claims" because an "insurer's denial of insurance proceeds, standing alone, entitled it to recover on its extra-contractual claims." *Id.* at 808 n.1. Unlike *Parkans*, *Castañeda*, and *Stoker*, the insured in *Great American* had established coverage under the insurance policy. *Id.* at 806. *Great American* thus established "the opposite rule from that [set forth] in *Vail.*" *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015). Meanwhile, several Texas intermediate appellate courts continued to adhere to *Vail*. *See id.*

At the time of the district court's ruling, the Texas Supreme Court had not spoken on the independent injury requirement for extra-contractual claims since *Great American*. Consequently, the district court, while expressing reservations about the confused state of the law in this area, followed *Great American* as binding precedent.

During the course of this appeal, the Texas Supreme Court issued an opinion in *USAA Texas Lloyds Co. v. Menchaca*. In *Menchaca*, the court "distill[ed] from [its previous] decisions five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context." 545 S.W.3d at 489. Two of those rules are directly relevant to this case: the "entitled-to-benefits rule" and the "independent-injury rule."

The "entitled-to-benefits" rule provides that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the [Insurance Code] if the insurer's statutory violation causes the loss of the benefits." *Id.* at 495. Acknowledging that this rule "is what [was] recognized in *Vail*," the court clarified that it "did not reject the *Vail* rule in *Stoker* or in *Castañeda*." *Id.* at 496. On the contrary, it explained:

22

> *Stoker* and *Castañeda* stand for the general rule that an insured cannot recover policy benefits as damages for an insurer's extra-contractual violation if the policy does not provide the insured a right to those benefits. *Vail* announced a corollary rule: an insured who establishes a right to benefits under the policy can recover those benefits as actual damages resulting from a statutory violation.

*Id.* at 497.

By reaffirming *Vail*, *Menchaca* compels reexamination of significant aspects of *Great American*'s reasoning. Yet despite the Texas Supreme Court expressly stating that our court was wrong to conclude that *Vail* had been overruled, *id.* at 495–96, OSC urges us to maintain our position based on the "independent-injury rule." *Menchaca* explained that "[t]here are two aspects to th[e] independent-injury rule." *Id.* at 499.

> The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. . . . The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits.

*Id.* at 499–500.

As the phrase "beyond policy benefits" suggests, the independent-injury rule does not restrict the damages an insured can recover under the entitled-to-benefits rule. Rather, the independent-injury rule limits the recovery of *other* damages that "flow" or "stem" from a mere denial of policy benefits. *Id.* at 500 ("When an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits."). For example, an insured cannot recover damages for emotional distress caused by a mere

denial of policy benefits because (1) the entitled-to-benefits rule does not provide for the recovery of such damages, and (2) the second aspect of the independent-injury rule precludes such recovery.[4]

As previously mentioned, the Insurance Code provides for the trebling of "actual damages" if the insurer "knowingly committed the act complained of." TEX. INS. CODE § 541.152(b) ("[O]n a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award an amount not to exceed three times the amount of actual damages."). Because the entitled-to-benefits rule allows an insured to recover policy benefits "as 'actual damages' under the statute," *Menchaca*, 545 S.W.3d at 495, an insured may recover treble the amount of policy benefits received as "actual damages" pursuant to § 541.152. In its discussion of the entitled-to-benefits rule, the *Menchaca* court observed that the insureds in *Vail* were awarded "the amount of the 'full policy limit' *plus treble that amount*, attorney's fees, and prejudgment interest." *Id.* at 495 (emphasis added) (citing *Vail*, 754 S.W2d at 131). *Menchaca*'s strong reaffirmation of *Vail* confirms that an award of trebled policy benefits pursuant to § 541.152(b) does not run afoul of the independent-injury rule's limitation on the recovery of "damages beyond policy benefits."

---

[4] However, an insured can recover actual damages for emotional distress if those damages are "caused by" the insurer's Insurance Code violation and "are separate from and . . . differ from benefits under the [policy]." *Menchaca*, 545 S.W.3d at 499 (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995), and citing *Twin City* as having "identif[ied] mental anguish damages as an example" of damages that could be recovered under the first aspect of the independent-injury rule).

In the recent Texas cases OSC relies upon, the courts applied the independent-injury rule to bar the recovery of extra-contractual damages where there was no proof of damages independent of the policy benefits. *See State Farm Lloyds v. Webb*, No. 9-15-408-CV, 2017 WL 1739763, at *9 (Tex. App.—Beaumont May 4, 2017, no pet.) (mem. op.); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 848–49 (Tex. App.—Houston [14th Dist.] May 23, 2017, no pet.).

No. 16-20195

In this case, LSB was entitled to a defense from OSC as a benefit of the OSC Policy. Consequently, if LSB establishes that OSC's alleged misrepresentations caused it to be deprived of that benefit, LSB can recover the resulting defense costs it incurred as actual damages under Chapter 541—without limitation from the independent-injury rule. Furthermore, if LSB proves that OSC committed the statutory violation "knowingly," it may recover treble that amount.

Accordingly, we reverse the district court's judgment with respect to LSB's Chapter 541 claim and remand for further proceedings in light of this opinion and *Menchaca*.

## C. OSC's Appeal of the Damages Rulings

OSC challenges two aspects of the district court's damages determinations.

### 1. Defense Costs

OSC argues that LSB is not entitled to the vast majority of the $655,600.27 it received as damages for OSC's breach of its duty to defend.[5] The propriety of awarding these damages is a question of law subject to *de novo* review, while the actual calculation of damages is an issue of fact reviewed for clear error. *Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 424 (5th Cir. 2013); *Munn v. Algee*, 924 F.2d 568, 575 (5th Cir. 1991).

Of the $655,600.27 in defense costs awarded to LSB, $500,000 is attributable to a deductible that LSB paid to another insurer. The record supports LSB's claim that this payment was maintained in an escrow account and was used to pay for defense fees and costs incurred in the state court suit.

---

[5] OSC does not challenge the $1,537.50 awarded to LSB for fees paid to a mediator. OSC also argues that LSB is not entitled to $93,013.77 in damages that the district court did not award. Since LSB does not seek those damages in its cross-appeal, we do not address that argument.

"Texas law recognizes that attorneys' fees and expenses incurred by an insured in an underlying lawsuit are damages produced by the insurer's breach of its duty to defend." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 750 (5th Cir. 2011) (citing *U.S. Cas. Co. v. Schlein*, 338 F.2d 169, 175 (5th Cir. 1964)). Accordingly, we uphold this portion of the district court's award.

The district court also awarded $131,992.67 to LSB for unreimbursed defense fees it spent on an independent counsel and $22,070.10 for webhosting costs incurred by the independent counsel. OSC asserts that these expenditures were unnecessary, in part because LSB had other paid counsel available. "It is well settled that once an insurer has breached its duty to defend, the insured is free to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his option." *Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat. Corp.*, 719 F.2d 116, 120 (5th Cir. 1983) (citation omitted); *accord Primrose Operating Co.*, 382 F.3d at 559 ("A breach of the duty to defend entitles the insured to the expenses it incurred in defending the suit, including reasonable attorney's fees and court costs."); *cf. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 393–94 (5th Cir. 2014) (insurer that *properly* fulfilled its duty to defend could refuse to pay defense fees incurred by insured's independent counsel that the insurer did not approve, when there was no disqualifying conflict of interest). Since OSC breached its duty to defend, it is in no position to object to defense-related expenditures that are supported by the record and that are not patently unreasonable.

Because there is no basis for finding that the district court erred in awarding these damages, we affirm.

### 2. The PPCA Statutory Penalty

As mentioned above, an insurer that fails to comply with the PPCA's requirements is liable for "the amount of the claim" itself, as well as "interest on the amount of the claim at the rate of 18 percent a year as damages, together

with reasonable attorney's fees." TEX. INS. CODE § 542.060(a).[6] Having determined that OSC was liable under the PPCA, the district court, in its final judgment, ordered OSC to pay the 18 percent statutory penalty "until the date of payment of this judgment." OSC moved to amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that the penalty should only accrue until the date of judgment, rather than the date the judgment is paid. The district court denied that motion. "We generally review a decision on a motion to alter or amend judgment for abuse of discretion, although to the extent that it involves a reconsideration of a question of law, the standard of review is *de novo*." *In re Deepwater Horizon*, 824 F.3d 571, 577 (5th Cir. 2016) (per curiam) (citing *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)).

The PPCA itself does not expressly state when the 18 percent penalty stops accruing, but this court has held that it "only accrues until the date judgment is rendered in the trial court." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 809 (5th Cir. 2010) (citing *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427–28 (Tex. 2004)). Compelling reasons support the approach taken by the district court;[7] however, under this

---

[6] The provision was amended effective September 1, 2017. This opinion references the version in effect at the time of the district court's judgment. The amended version does not appear to be materially different from the previous version insofar as this appeal is concerned.

[7] The court in *Great American* did not examine the PPCA in any detail—it simply relied on language in *Mex-Tex*. The court in *Mex-Tex*, in turn, does not appear to have even considered the issue of when the penalty's accrual period ends; its passing statement that the insured was entitled to the statutory penalty "to the date of judgment" seems to have been a reference to an uncontested aspect of the trial court's judgment. *See Mex-Tex*, 150 S.W.3d at 425, 427. By contrast, a provision of the PPCA mandates that the statute "be liberally construed to promote the prompt *payment* of insurance claims." TEX. INS. CODE § 542.054 (emphasis added). Allowing the penalty to accrue until the date the claim (or judgment) is actually paid, rather than pretermitting it on the date of judgment, accords more fully with that purpose. *See* Mark L. Kincaid et al., *Annual Survey of Texas Insurance Law*, 19 J. CONSUMER & COM. L. 91, 97–98 (2016) ("There is no rational basis nor any basis in the language of the statute for stopping the penalty on the date of judgment, when the violation

court's rule of orderliness, "one panel may not overrule the decision, right or wrong, of a prior panel," absent an intervening change in state law. *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991); *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995). LSB does not identify any such change in Texas law, nor does it propose "a principled basis to distinguish" *Great American*. *See Canal Indem. Co. v. Galindo*, 344 F. App'x 909, 911 (5th Cir. 2009).[8]  *Great American*'s interpretation of the PPCA is binding on this panel, so we reverse the district court's judgment to the extent it imposed the 18 percent statutory penalty after the "date of judgment."

Because the PPCA is a Texas statute, the "date judgment was rendered in the trial court" must be assessed in light of Texas law. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). Texas generally recognizes that "only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law." TEX. R. CIV. P. 301. With respect to LSB's claims for breach of the duty to defend and for violation of the PPCA, that date is February 23, 2016, the day the district court entered the amended final judgment. *See, e.g.*,

---

is a failure to pay. The insured remains unpaid on the date of judgment. The insurer has been penalized during the time it may have been challenging the claim in good faith. Why does it make sense to stop the penalty once the insurer's liability is recognized by a judgment? It doesn't.").

[8] The district court cited *Nautilus Insurance Co. v. International House of Pancakes, Inc.*, 4:03-CV-2182, 2009 WL 5061767 (S.D. Tex. Dec. 15, 2009), which assessed the statutory penalty based on each day that the insured's "defense costs remain unpaid." *Id.* at *5. Like this case, *Nautilus* involved an insurer's breach of the duty to defend. *Id.* at *1. By contrast, *Great American* and *Mex-Tex* involved the duty to indemnify. In the present case, however, the underlying suit ended prior to the entry of judgment in the coverage action, and the insured had already incurred all its defense costs prior to judgment. In these circumstances— that is, where the insured will not incur new defense costs post-judgment—there is no obvious basis for distinguishing between defense costs and claims for indemnity, insofar as the end date for accrual of the PPCA's statutory penalty is concerned.

No. 16-20195

*City of W. Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722, 727 (Tex. 1971) (a "corrected final judgment" replaces an earlier judgment).

But when a judgment is partially reversed on appeal, the trial court's judgment becomes a nullity as to those claims on which the reversal is based. *See Bramlett v. Phillips*, 359 S.W.3d 304, 310 (Tex. App.—Amarillo 2012) (collecting cases), *aff'd*, 407 S.W.3d 229 (Tex. 2013). Due to our reversal of the district court's judgment with respect to LSB's Chapter 541 claim, no judgment has yet been rendered on that claim. Consequently, if, on remand, LSB prevails on its Chapter 541 claim and elects to recover its defense costs as actual damages under the Insurance Code, rather than as breach-of-contract damages, it will be entitled to the 18 percent penalty applied to the amount of those damages through the date of the new judgment. *See* TEX. INS. CODE § 542.061 (providing that the PPCA's remedies "are in addition to any other remedy or procedure by law or at common law"); *Menchaca*, 545 S.W.3d at 495 ("Because the Insurance Code provides that the statutory remedies are cumulative of other remedies, we concluded [in *Vail*] that the insureds could elect to recover the benefits under the statute even though they also could have asserted a breach-of-contract claim."). Such recovery would be entirely consistent with the PPCA's statutory purpose and would not impermissibly penalize OSC. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997) ("State Farm took a risk when it chose to reject Higginbotham's claim. State Farm lost when it was found liable for breach of contract. Therefore, it must pay this 18 percent per annum interest and reasonable attorneys' fees."); *Nautilus Ins. Co. v. Int'l House of Pancakes, Inc.*, 622 F. Supp. 2d 470, 480–82 (S.D. Tex. 2009) (rejecting due process challenge to PPCA); *cf. Pennington v. Singleton*, 606 S.W.2d 682, 690–91 (Tex. 1980) (treble damage provision of Texas Deceptive Trade Practices Act fell within the "wide latitude of discretion" given to states under the Due Process Clause).

No. 16-20195

## III.  CONCLUSION

For the reasons given above, we AFFIRM the district court's judgment in part and REVERSE in part. This case is REMANDED for further proceedings consistent with this opinion.